OPINION OF THE COURT
Daniel R. Palmieri, J.
The present case arises from a bitterly contested matrimonial action in which the plaintiff Kristin Dupree has sued her former attorney for legal malpractice, and her former husband’s attorneys for abuse of process and certain alleged misrepresentations that she claims give rise to a cause of action under Judiciary Law § 487. The pleading recites that the key event was the ex parte presentation of an order to show cause to the matrimonial court that she contends was based on these misrepresentations. The complaint alleges that certain relief was granted to her husband Keith Dupree on that day, which allowed him to cheat her out of her interest in the marital residence, requiring her to expend tens of thousands of dollars on additional legal fees to rectify matters.
Upon motion of defendants Karyn A. Villar and Dorothy A. Courten, the husband’s former attorneys, and by way of order dated May 1, 2008, this court dismissed the action as against them pursuant to CPLR 3211. On this motion for reargument and renewal, and for vacatur of the order, the court is called on to reconsider this prior determination in which, among other things, it evaluated the Judiciary Law cause of action under existing Appellate Division case law. This reconsideration is granted in the form of renewal. It is based, primarily, on Amalfitano v Rosenberg (12 NY3d 8 [2009]), a decision of the Court of Appeals rendered in February of this year, well after the initial motion was decided.[1] It is also granted in view of an affidavit submitted by plaintiff’s own former lawyer, defendant Oliver Raymond Voorhees, III, in support of his own later motion for summary judgment. Although the court stresses that no findings of fact are made here with regard to the lawyer whose alleged conduct is the subject of the Judiciary Law claim, the re *398 vival of this cause of action under the Amalfitano decision emphasizes the need for all attorneys to be completely forthright in their dealings with the court, and with one another.
Because it is material to the present application, the salient facts as alleged by the plaintiff and set forth in the May 1, 2008 order will be restated here. Kristin alleges that at the time the divorce action was commenced in October of 2002 the marital premises in Southampton, New York was titled to her and Keith by the entirety, and was encumbered by a mortgage in the amount of $113,881.77. In February of 2003 the matrimonial court (Bivona, J.) ordered Keith to cure defaults under the mortgage. He did not, and in April of 2003 a foreclosure action was begun against the marital property. On October 3, 2003 an order appointing a referee to compute the sums due under the mortgage was filed. At this stage of the foreclosure proceedings no referee’s report of the computation had been filed or confirmed, and no judgment of foreclosure and sale had been issued.
On October 17, 2003 the parties entered into a stipulation under which Keith would buy out Kristin’s interest in the residence for $70,000 in cash and a $25,000 mortgage as soon as he could refinance the property. He obtained a mortgage commitment from a bank for $145,462.70, which was not enough to pay Kristin what had been agreed upon after payoff of the existing mortgage and closing fees and expenses.
According to Kristin, Keith and his attorney Villar then “devised a brazen scheme to embezzle the property” by making an emergency application to the Supreme Court on November 21, 2003 in which Keith sought to be appointed temporary receiver of the property. Villar certified certain representations made to the court. These were that this relief was necessary to prevent a pending foreclosure sale and to refinance the property in order to effectuate the October 17, 2003 settlement, and that Kristin could not be paid contemporaneously because the proceeds would be in escrow for three days, as is customary for a refinance.
Kristin’s complaint alleges that these representations were false because a sale was not imminent (that is, there was no emergency), there was not enough money to effectuate the October 17 settlement, and that this was not a refinance at all but rather a new mortgage with no escrow period. She further alleges that Villar knew they were false, but the court relied on these representations and appointed Keith as a temporary *399 receiver. Keith then used his power to convey the premises to himself alone, paid off the existing mortgage and encumbered the premises with the new mortgage, and gave nothing to Kristin, thereby “embezzling her interest.” Because she no longer had an interest in the premises, she lost the benefit of an increase in the value of the property, alleged to be approximately $550,000. She alleges that her portion of the equity would have been $210,000. She also alleges that as a direct consequence of Keith’s exercise of power under the receivership she incurred $75,000 in legal fees.
Based upon these allegations and a transcript of proceedings before Justice Bivona, this court concluded that the two claims asserted against Villar and Courten could not be sustained. The first sounded in abuse of process. The second alleged a violation of Judiciary Law § 487, which provides for treble damages against an attorney who engages in “deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party.” (Judiciary Law § 487 [1].)
That branch of the motion that seeks reargument is denied. Initially, the court finds that a motion for reargument is timely, as an appeal had been taken from the order that is the subject of the motion within 30 days of service of a copy of the order with notice of entry, and remains unperfected. (Itzkowitz v King Kullen Grocery Co., Inc., 22 AD3d 636 [2d Dept 2005].)
However, the court does not find that it misapprehended the facts or the law on the prior motion. (CPLR 2221 [d]; see e.g. Matter of New York Cent. Mut. Ins. Co. v Davalos, 39 AD3d 654 [2d Dept 2007]; Foley v Roche, 68 AD2d 558 [1st Dept 1979].) The court must reject the movants’ assertion that it improperly relied upon its own analysis, which plaintiff states was based upon “complex and obscure legal principles raised sua sponte by the Court.” Nor did it “impermissibly” (or otherwise) convert the application to one for summary judgment pursuant to CPLR 3211 (c).
As a procedural matter, and as noted above, the movants asked in their notice of motion for an order of dismissal. Their attorney’s affirmation in support cited CPLR 3211 (a) (4), (5), (7) and (10). The court did not convert the motion to one for summary judgment under CPLR 3211 (c). Rather, the decision expressly was made pursuant to CPLR 3211 (a) (1) (documentary evidence) and (7) (failure to state a cause of action). The document relied upon was submitted by the movants (the transcript of settlement proceedings before Justice Bivona, *400 dated Feb. 7, 2007), was not in dispute, and both parties had an opportunity to address it. Indeed, and as stated in the decision, plaintiffs current counsel was one of the participants during the proceeding before Justice Bivona. Under these circumstances, the court did not have to ignore it simply because the specific section of CPLR 3211 (a) had not been cited in the defendants’ notice of motion. (See Schenectady Intl. v Employers Ins. of Wausau, 245 AD2d 754 [3d Dept 1997]; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3211:37, at 58.)
Moreover, as both parties had submitted evidentiary material in support of and in opposition to the allegations made in the complaint, the court was called upon to determine whether the plaintiff had a claim against the attorneys, not merely whether she had stated one, as part of its review of the pleading pursuant to CPLR 3211 (a) (7). (Guggenheimer v Ginzburg, 43 NY2d 268 [1977]; Morris v Morris, 306 AD2d 449 [2d Dept 2003]; Feeley v Midas Props., 154 AD2d 505 [2d Dept 1989].)
However, renewal is granted with respect to the claim against Villar made pursuant to Judiciary Law § 487. As stated above, the court finds that the affidavit of defendant Voorhees, which had been submitted on his later motion for summary judgment, and the decision of the Court of Appeals, which also postdated the May 1, 2008 order, should change this prior determination. (CPLR 2221 [e] [2].)
The plaintiffs complaint, as discussed above, focused on the merits of the application to Justice Bivona made by Villar and her allegedly false certification of certain facts in support of that application. For the reasons stated in the May 1, 2008 order, the court does not find that these allegations are sufficient to sustain the abuse of process claim. However, the court’s analysis of the Judiciary Law cause of action was based not on the merits of the facts alleged in support of such a claim, but rather on Appellate Division cases decided before the recent Court of Appeals determination in Amalfitano v Rosenberg (supra). A reading of that case indicates that, contrary to what this court concluded in the May 1 decision, it should not be fatal to a plaintiff that the misrepresentation(s) upon which the Judiciary Law claim is based became known during the course of the underlying litigation, and that attorneys’ fees alone may be considered damages proximately caused by the wrongful conduct.
Amalfitano arose from litigation in the state courts, in which Rosenberg had been the attorney for certain plaintiffs, and the *401 Amalfitanos were defendants. After a judgment of dismissal was entered in the underlying action, the Amalfitanos brought an action against Rosenberg in the District Court for the Southern District of New York. They alleged a violation of Judiciary Law § 487 in the initiation and prosecution of the action on behalf of his clients. (Amalfitano v Rosenberg, 428 F Supp 2d 196, 206 [SD NY 2006].) A judgment against Rosenberg by the District Court was appealed to the Second Circuit Court of Appeals, which stated that it “would almost surely affirm” the judgment if two questions of New York law it considered unsettled were answered in the affirmative. (Amalfitano v Rosenberg, 533 F3d 117, 126 [2d Cir 2008].) It certified the following questions to the New York Court of Appeals:
“(1) Can a successful lawsuit for treble damages brought under N.Y. Jud. Law § 487 be based on an attempted but unsuccessful deceit upon a court by the defendant?
“(2) In the course of such a lawsuit, may the costs of defending litigation instituted by a complaint containing a material misrepresentation of fact be treated as the proximate result of the misrepresentation if the court upon which the deceit was attempted at no time acted on the belief that the misrepresentation was true?” (533 F3d at 126.)
The Court of Appeals essentially answered both questions in the affirmative. In so doing, it traced the history leading to the statute as being rooted in the common law of crimes, independent of the tort claim for fraud. It quoted liberally from an 1878 decision of the Appellate Division, Second Department (Looff v Lawton, 14 Hun 588 [1878]), which dealt with a predecessor statute, a statute the Court of Appeals stated was virtually unchanged in its modern form. The court noted that the Appellate Division had opined that the Legislature
“intended an expansive reading rather than ‘confining the term to common law or statutory cheats’
“The statute is limited to a peculiar class of citizens, from whom the law exacts a reasonable degree of skill, and the utmost good faith in the conduct and management of the business intrusted to them . . . To mislead the court or a party is to deceive it; and, if knowingly done, constitutes criminal deceit under the statute cited.’ ” (Amalfitano, 12 NY3d at 13-14, quoting Looff v Lawton at 589-590.)
*402 Because attempts at crimes, not just crimes, are subject to prosecution, the Court of Appeals thus held that an attempt to deceive the court alone is sufficient to be actionable under Judiciary Law § 487. The holding in Amalfitano does not directly address the law upon which this court relied in dismissing the Judiciary Law § 487 claim. This was, in large measure, that a party who becomes aware of an attorney’s deceit while an action is still pending must bring it to the attention of the trial court and cannot wait until the case is over to start an action. (See Cramer v Sabo, 31 AD3d 998 [3d Dept 2006]; Melnitzky v Owen, 19 AD3d 201 [1st Dept 2005]; Hansen v Werther, 2 AD3d 923 [3d Dept 2003]; Curtis v Scherer, 261 AD2d 158 [1st Dept 1999]; Yalkowsky v Century Apts. Assoc., 215 AD2d 214 [1st Dept 1995]; cf. North Shore Envtl. Solutions, Inc. v Glass, 17 AD3d 427 [2d Dept 2005] [citing Yalkowsky and Curtis in affirming dismissal of plenary action against accountants for alleged conspiracy and fraud in a concluded class action suit].)
However, it appears that by way of its liberal reading of the intendment of Judiciary Law § 487 the Court of Appeals would not mandate that, on pain of losing her claim, a party who becomes aware of an attorney’s deception during the course of litigation must take her complaint to the presiding judge in that action or proceeding. To that extent, this court finds that its earlier determination read these cases too restrictively in stating this as a bright-line rule. Rather, in view of Amalfitano a better reading of those Appellate Division cases would be that a plenary action under this section may not be commenced afterwards only if its essential purpose is to give that party a means to collaterally attack the judgment in the underlying action. Indeed, as noted above, the Amalfitano action itself was commenced after judgment had been entered in the state court action. The complaint in the action before the District Court alleged that it was based on Rosenberg’s conduct throughout the state litigation, indicating that the Amalfitanos certainly knew about it before that case ended.
Therefore, reading the plaintiffs complaint and submissions in the present action favorably to the plaintiff, as this court must on a motion to dismiss (Guggenheimer v Ginzburg, supra), it is apparent that the plaintiff here is not attempting to collaterally attack a judgment in a concluded action. As limited by this court’s determination regarding the absence of any other potential damages, the plaintiff here is seeking to recover the additional legal fees made necessary in her matrimonial action because of the alleged misrepresentation by Villar.
*403 This second answer by the Amalfitano Court also requires a change to this court’s related holding in the May 1, 2008 order that any additional fees should have been sought in the matrimonial action pending before Justice Bivona. It is now clear that this is a legitimate source of damages in an action under Judiciary Law § 487; attorneys’ fees may be seen as proximately caused by the deceit, and may be recovered whether or not the court acted in the belief that a misrepresentation was true. Here, of course, the plaintiff alleges that Justice Bivona did act on the belief that the alleged misrepresentations were true. As fees may be recovered, they cannot be limited to an application before the court in the underlying action because this would eliminate the possibility of treble damages, which are given to a plaintiff by the subject statute.
The court also agrees that, given the burdens applicable to dismissal motions, the affidavit of defendant Voorhees submitted on his own, later-made motion for summary judgment may be used by the plaintiff to raise issues of fact as to whether Villar fully informed him of her intention to appear before Justice Bivona and to seek an immediate order appointing him as receiver of the property. Although the complaint alleges at paragraph 20 that Voorhees “was given notice of the emergency application” this does not constitute a factual statement that in that application the ultimate order for which the motion was being made — appointment of Keith as the receiver — would be sought, granted and acted upon the same day it was presented.
As discussed in this court’s later order on his motion for summary judgment, dated July 31, 2008,[2] in his affidavit in support Voorhees did not deny that he was on notice of an application to the court that was to be made while he was serving on jury duty. However, he also stated that he did not see a copy of the order to show cause until the next day, Saturday, when he went to his office and found a faxed copy. This court found that, in reading the record in favor of the plaintiff as the motion opponent, an issue of fact existed as to whether he was negligent in not appearing on Friday, or for not seeking an adjournment, or for not attempting to engage another attorney to appear on his behalf. That, however, is not a finding that he knew exactly what his adversary, Villar, would ask Justice Bivona to do upon presentation of the order to show cause, and indeed there is no dispute that he did not see a copy of the proposed order until he found an executed faxed copy the next day.
*404 Given the foregoing, and the court’s obligation on a motion to dismiss to read the pleading and all evidence submitted in favor of the plaintiff (and the absence of a transcript of proceedings before Justice Bivona), the Voorhees affidavit may be seen as calling into question whether Villar fully revealed to Voorhees, known by her to be personally unable to appear, that she was going to ask Justice Bivona for the ultimate relief on her motion immediately upon presentation of the order to show cause that very day. If these circumstances are ultimately proved to be part of some deception on her part — and these are just allegations at this point — this would constitute a basis for a claim under Judiciary Law § 487 (1), which provides for treble damages against an attorney who engages in “deceit or collusion . . . with intent to deceive the court or any party.” (Emphasis supplied.)
In sum, the Amalfitano case and the Voorhees affidavit provide a reason for granting renewal of the motion to dismiss made by Villar and Courten, and for reinstatement of the complaint as against Villar with respect to the fourth cause of action, which is grounded on Judiciary Law § 487.
This cause of action is not, however, reinstated as to Courten. As a general matter, treble damages provisions are to be given the same strict scrutiny as punitive damages awards, and require more than just a jural relationship between two persons before one can be cast in exemplary damages for the acts that would subject the other to those damages. Participation in or ratification of the other person’s acts is required. (Lyke v Anderson, 147 AD2d 18 [2d Dept 1989].) No such allegations about Courten’s behavior have been made, regarding whom the complaint asserts vicarious liability only.
In addition, and more specifically, the history of Judiciary Law § 487 is rooted in criminal law, not tort law, as was outlined by the Court of Appeals. Indeed, under Judiciary Law § 487 such an act is also a crime, a misdemeanor. It would be inconsistent with this history and the statute itself to hold a second attorney responsible for the deceit of another unless that second attorney also could be charged as having participated in or having consented to the acts complained of. Accordingly, there will be no vacatur of the dismissal as it applies to Courten.
In sum, plaintiff Kristin Dupree’s motion to renew and reargue the motion by defendants Karyn A. Villar and Dorothy A. Courten to dismiss the complaint prior to answer insofar as asserted against them, which motion was granted by decision *405 and order of this court dated May 1, 2008, and, upon such renewal and reargument vacating that order and reinstating the complaint against these defendants, is granted to the extent that renewal is granted, the order is vacated insofar as it affects Karyn A. Villar and the fourth cause of action is reinstated as against this defendant. The motion is otherwise denied.

. The change in law was not noted in the papers submitted by the parties. However, there is no authority of which the court is aware that prevents it from performing its own analysis of relevant law, whether or not raised by the parties. It should be noted that, although the court was aware of the decision, counsel for the plaintiff had notified chambers of its existence after the motion had been submitted, on notice to opposing counsel, and there had been no request to submit any additional papers or to adjourn the submission date of the motion from any party.

. Judicial notice is taken of that order. (CPLR 4511.)