06-2364-cv
Amalfitano v. Rosenberg

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: September 6, 2007                    Decided: July 15, 2008
                                         Errata Filed: August 6, 2008)

Docket No. 06-2364-cv

--------------------------------------

VIVIA AMALFITANO AND GERARD AMALFITANO,

Plaintiffs-Appellees,

- v -

ARMAND ROSENBERG,

Defendant-Appellant.

--------------------------------------

Before:   WALKER, CALABRESI, and SACK, Circuit Judges.

Appeal from a judgment of the United States District Court for the Southern District of New York (Naomi Reice Buchwald, Judge), after a bench trial, awarding the plaintiffs $268,245.54 and costs against the defendant under the provisions of New York Judiciary Law § 487 for the defendant's attempted deceit of Supreme Court, New York County, and successful deceit of the Appellate Division, First Department, in connection with an action against the plaintiffs.  Because the issue of the actionability of attempted deceit is undecided under New York law:

Questions certified to the New York State Court of Appeals.

WILLIAM J. DAVIS, Scheichet & Davis, P.C., New York, NY, for Defendant-Appellant.

RICHARD E. HAHN, Llorca & Hahn LLP, New York, NY, for Plaintiffs-Appellees.

SACK, Circuit Judge:

Defendant-Appellant Armand Rosenberg appeals from the judgment of the United States District Court for the Southern District of New York (Naomi Reice Buchwald, Judge) finding him liable pursuant to New York Judiciary Law § 487 for treble damages arising from several of his actual and attempted acts of deception on New York State courts in the course of litigation before them. See Amalfitano v. Rosenberg, 428 F. Supp. 2d 196 (S.D.N.Y. 2006). On appeal, he contends that (1) the district court's finding that the Appellate Division was deceived was not supported by clear and convincing evidence; and (2) the district court erred in concluding that section 487 imposes liability for attempted deceit.

For the reasons that follow, we certify to the New York Court of Appeals two questions regarding whether section 487 permits recovery of damages based on an attempted, but unsuccessful, deceit.

**BACKGROUND**

Three brothers, Peter, James, and John Costalas, were at one time engaged in a family real estate and restaurant

2

business together.  Unbeknownst to James and John, Peter undertook a series of personal business transactions that ultimately resulted in the loss of four of five buildings owned by the family, and eleven of their twelve restaurants.  Peter diverted between eight and ten million dollars of the family business to himself, forging the signatures of several members of his family on business documents.  He used this money both to fund his "palatial" apartment overlooking Central Park and to cover his losses from extensive and ultimately unsuccessful options trading.

Rosenberg, a member of the New York Bar, began representing Peter in the early 1990s after these misadventures first came to light.  The representation included several foreclosure proceedings on the family's buildings.  Rosenberg also negotiated with James and John on Peter's behalf to dissuade them from seeking to have criminal charges brought against Peter.

The Gruntal Litigation

Although James and John did not in the end seek to have criminal charges brought against Peter, they did file a civil lawsuit against him, also naming as a defendant Gruntal & Co., Inc. ("Gruntal"), the broker Peter used in his unsuccessful options trading.  See Complaint at 1, Costalas v. Gruntal & Co., No. 92 Civ. 8677 (S.D.N.Y. filed Dec. 1, 1992) (the "Gruntal litigation").  Rosenberg never formally appeared in the Gruntal litigation, but he was retained by Peter and communicated with

3

James and John's counsel, Vito Vincenti, on several occasions with regard to the Gruntal litigation.

### The August 1993 Agreement

In August 1993, John and Peter signed an agreement (the "August 1993 Agreement") in which Peter assigned his one-third interest in the family business and partnerships to John in exchange for $12,000. The assets transferred included Peter's interest in the partnership known as 27 Whitehall Street Group, which owned the one building the family had not lost, located at 27 Whitehall Street in Manhattan ("27 Whitehall Street"). Peter also assigned to John two-thirds of any recovery he might receive in his cross-claims against Gruntal.[1]

Rosenberg represented Peter in the negotiations that led to the drafting of the August 1993 Agreement. He held several telephone conversations with Vincenti in connection with it, and he received several drafts of the agreement. Rosenberg was also "instrumental" in negotiating a settlement of Peter's cross-claims against Gruntal, which involved a payment of $200,000. In accordance with the August 1993 Agreement, Rosenberg retained one-third of the payment as his fee and divided the remaining two-thirds into two equal checks.[2] Vivia

---

[1] The other one-third was assigned to Rosenberg as a contingency fee.

[2] It is not clear from the record why two-thirds of the recovery was divided into two checks even though the August 1993 Agreement provided that all of the two-thirds recovery was to go to John. Perhaps John and James planned to share that recovery.

4

Amalfitano, James's daughter and one of the appellees in this case, picked up one of those checks on her father's behalf. It is not clear from the record what happened to the other check for one-third of the settlement. Presumably, it went to John.

On April 11, 1994, Peter was dismissed as a party to the Gruntal litigation by stipulation.

The Costalas Litigation

In 1993, after the upheaval that resulted from the discovery of Peter's wrongdoing, Vivia began to assume responsibility for the family business. At that point the business included just one restaurant and the building at 27 Whitehall Street. The building was subject to a two-million-dollar mortgage at the time. In 2000, Vivia purchased the building from the family in order to avoid foreclosure. The contract of sale was assigned to Vivia's corporation, MSA Twins, Ltd. Vivia personally guaranteed the mortgage loan, and John and James were released from their obligations on the mortgage.

On May 24, 2001, Peter, represented by Rosenberg, initiated a lawsuit in New York state court against Vivia and her husband, Gerard Amalfitano, alleging that they had defrauded the family business and partnership in the sale of 27 Whitehall Street. See Complaint at 1, Costalas v. Amalfitano, No. 110552/01 (N.Y. Sup. Ct. filed May 24, 2001) (the "Costalas

5

litigation").[3]  Despite the August 1993 Agreement removing Peter from the partnership, the complaint alleged that Peter was a member of the partnership.  On July 31, 2001, the Amalfitanos moved to dismiss the complaint in the Costalas litigation on the ground that Peter lacked any interest in 27 Whitehall Street because he had transferred his interest to John under the August 1993 Agreement.

In response to the motion to dismiss, Rosenberg filed a cross-motion for summary judgment.  In its support, he prepared an affidavit, executed by Peter, that asserted that the August 1993 Agreement "was never intended and did not have any real effect" because Peter's prior attorney, Oscar Goldberg, had advised him to sign the agreement as a sham to avoid potential creditors.

Supreme Court, New York County (Ira Gammerman, J.) granted the Amalfitanos' motion to dismiss.  Rosenberg, on behalf of his client Peter, moved to vacate the dismissal.  Justice Gammerman denied the motion on the grounds that (1) Peter was prohibited by the parol evidence rule from arguing that the August 1993 Agreement was a sham, and (2) Peter lacked standing to bring the lawsuit.[4]

---

[3] Ironically, the complaint also included a claim against Gerard pursuant to N.Y. Jud. Law § 487.

[4] The first order of dismissal was entered by default when Rosenberg did not appear for oral argument. In support of a motion to vacate the default judgment, Rosenberg submitted an affidavit and medical records showing that he had been hospitalized the day after the scheduled argument and had not

Rosenberg, on Peter's behalf, appealed the denial of the motion to vacate to the Appellate Division, First Department. Included in the record on appeal was Peter's affidavit asserting that the August 1993 Agreement was a sham. Also included were several of the family partnership's tax returns, which had erroneously continued to list Peter as a partner even after the August 1993 Agreement was executed. The First Department reversed the order of the trial court, concluding that there were "[s]erious open questions" regarding "the real need for and purpose of the purported assignment" and whether Peter was a member of the partnership. Costalas v. Amalfitano, 760 N.Y.S.2d 422, 424, 305 A.D.2d 202, 203 (1st Dep't 2003).

Back in the trial court, the parties proceeded with pre-trial discovery. Thereafter, Justice Gammerman granted the Amalfitanos' motion to dismiss. Rosenberg then moved on Peter's behalf to vacate the dismissal based on alleged ex parte communications between the Amalfitanos' counsel and Justice Gammerman. The motion was denied. The First Department unanimously affirmed the trial court's judgment. See Costalas v. Amalfitano, 808 N.Y.S.2d 24, 23 A.D.3d 303, 304 (1st Dep't 2005).

The Instant Suit

On March 16, 2004, the Amalfitanos filed the instant diversity action in the United States District Court for the

received notice of a rescheduled argument date. The trial court found that Rosenberg had provided a reasonable excuse, but it nonetheless denied the motion to vacate the default judgment for failure to show that the claims had merit.

Southern District of New York.  The complaint alleged that Rosenberg's conduct in the Costalas litigation violated New York Judiciary Law § 487,[5] and caused them damages in the form of attorney's fees and expenses from that litigation.

The case was tried to the bench over a period of four days.  The Amalfitanos called as witnesses themselves, Vito Vincenti, and Rosenberg.  Rosenberg called no witnesses.

In addition to finding the facts described above, the district court concluded that Rosenberg engaged in "a persistent pattern of unethical behavior" during the Costalas litigation. Amalfitano, 428 F. Supp. 2d at 203.

First, after the Amalfitanos served a notice of deposition on the former family accountant, Howard Komendant,

---

[5] Judiciary Law § 487 reads in its entirety:

§ 487  Misconduct by attorneys

An attorney or counselor who:

1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,

2. Wilfully delays his client's suit with a view to his own gain; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,

Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

N.Y. Jud. Law § 487.

Rosenberg sent Komendant a letter stating, in part, "You should be advised, that in my opinion, if, in fact, you served in a professional capacity, all communications, contacts and documents were of a privileged nature."  Rosenberg cited no authority for this proposition and failed to respond to opposing counsel's letter citing authority that there is no accountant-client privilege in New York.  Rosenberg subsequently failed to attend the Komendant deposition.  Komendant nonetheless brought counsel to the deposition, and the Amalfitanos were required to pay for the cost of his attendance.

Second, Rosenberg failed to correct Peter's deposition testimony to the effect that John and James had never brought suit against Gruntal, that Peter had never signed any documents during the Gruntal litigation, and that Peter had only sold stock options in the amount of "five, ten [options], here and there."

Third, Rosenberg refused to produce Peter's personal tax returns, insisting that they were "totally irrelevant."  He eventually produced the returns, but only after being ordered to do so by Justice Gammerman.  The returns, eventually admitted into evidence, showed that Peter had not asserted a partnership interest in 27 Whitehall Street Group after the August 1993 Agreement.

Fourth, Rosenberg told the Amalfitanos that he possessed audio recordings that would be very damaging to them -- what he referred to as an "atomic bomb."  He then refused to produce the recordings, while continuing to emphasize how

9

damaging they were. Once he was ordered by Justice Gammerman to produce the recordings, they turned out to be unintelligible.

Fifth, Rosenberg sought unsuccessfully to introduce into evidence an agreement dated October 1993 signed only by Peter stating, in direct contradiction of the August 1993 Agreement, that Peter, James, and John were all equal partners in 27 Whitehall Street Group. Rosenberg did this despite his knowledge that the August 1993 Agreement was valid and had been signed by his client.

Finally, Rosenberg sought to admit a document that purported to be Peter's 1998 personal tax return and that listed an interest in 27 Whitehall Street Group. That document, however, did not bear a receipt stamp to indicate that it had been filed with the IRS. Indeed, Rosenberg had already produced in discovery Peter's stamped 1998 return, which did not list any interest in 27 Whitehall Street.

The district court found for the plaintiffs and assessed damages in the amount of $89,415.18, comprising the Amalfitanos' legal fees from the inception of the Costalas litigation to the judgment. Because section 487 provides for treble damages, the court trebled the award to $268,245.54. The court also requested that the clerk of the court forward a copy of the court's opinion to the Committee on Grievances of the Southern District of New York and to the First Judicial Department Departmental Disciplinary Committee.

Rosenberg now appeals.

10

**DISCUSSION**

I. Standard of Review

We review the district court's findings of fact after a bench trial for clear error and its conclusions of law de novo. Koam Produce, Inc. v. DiMare Homestead, Inc., 329 F.3d 123, 126 (2d Cir. 2003). "In reviewing findings for clear error, we are not allowed to second-guess either the trial court's credibility assessments or its choice between permissible competing inferences." Ceraso v. Motiva Enters., LLC, 326 F.3d 303, 316 (2d Cir. 2003). This is so even if we might have weighed the evidence differently, as "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer, 470 U.S. 564, 574 (1985).

II. Section 487

Section 487 of the New York Judiciary Law, set forth in full in footnote 5, above, provides in relevant part that an attorney who

> [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . . [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

N.Y. Jud. Law § 487.

Section 487 thus permits a civil action to be maintained by any party who is injured by an attorney's

11

intentional deceit or collusion in New York on a court or on any party to litigation, and it provides for treble damages. See Fields v. Turner, 147 N.Y.S.2d 542, 543-44, 1 Misc. 2d 679, 680-81 (N.Y. Sup. Ct. 1955) (holding that the predecessor to section 487 provides a remedy to any party injured by the deceit of an attorney representing a party to an action, not only that attorney's client). The act of deceit need not occur during a physical appearance in court; the statute applies to any oral or written statement related to a proceeding and communicated to a court or party with the intent to deceive. Id. at 544, 1 Misc. 2d at 681.

It would appear that some courts in New York have imposed an additional prerequisite to recovery: that the plaintiff in a section 487 action show "a chronic and extreme pattern" of legal delinquency by the defendant. See Galland v. Kossoff, 824 N.Y.S.2d 630, 631, 34 A.D.3d 306, 307 (1st Dep't 2006); Solow Management Corp. v. Seltzer, 795 N.Y.S.2d 448, 448, 18 A.D.3d 399, 399-400 (1st Dep't 2005); Havell v. Islam, 739 N.Y.S.2d 371, 372, 292 A.D.2d 210, 210 (1st Dep't 2002); Schindler v. Issler & Schrage, P.C., 692 N.Y.S.2d 361, 362, 262 A.D.2d 226, 228 (1st Dep't 1999); Wiggin v. Gordon, 455 N.Y.S.2d 205, 209, 115 Misc. 2d 1071, 1077 (N.Y. Civ. Ct. 1982). That requirement appears nowhere in the text of the statute, however, and other courts have found attorneys liable under the statute

12

for a single intentionally deceitful or collusive act.[6] See Izko Sportswear Co., v. Flaum, 809 N.Y.S.2d 119, 122, 25 A.D.3d 534, 537 (2d Dep't 2006) (misrepresentation of conflict); NYAT. Operating Corp. v. Jackson, Lewis, Schnitzler & Krupman, 741 N.Y.S.2d 385, 386, 191 Misc. 2d 80, 82 (N.Y. Sup. Ct. 2002) (single instance of lying under oath).

III. Analysis

The district court found that Rosenberg acted with intent to deceive the trial court and the Appellate Division in the Costalas litigation with respect to all of the representations he made suggesting that Peter was a partner in 27 Whitehall Street Group, and that these misrepresentations caused injury to the Amalfitanos in the form of their legal fees from that litigation. See Amalfitano, 428 F. Supp. 2d at 209, 211-12. The district court further found that Rosenberg's intentional misrepresentations included the allegation in the verified complaint that Peter was a partner in 27 Whitehall Street Group, statements in a cross-motion for summary judgment and in the

---

[6] A few courts have gone further and held or suggested that a "chronic, extreme pattern of legal delinquency" is by itself sufficient for section 487 liability. See Izko Sportswear Co., v. Flaum, 809 N.Y.S.2d 119, 122, 25 A.D.3d 534, 537 (2d Dep't 2006) ("A violation of Judiciary Law § 487 may be established 'either by the defendant's alleged deceit or by an alleged chronic, extreme pattern of legal delinquency by the defendant.'") (emphasis in original) (quoting Knecht v. Tusa, 789 N.Y.S.2d 904, 904, 15 A.D.3d 626, 627 (2d Dep't 2005)); Parklex Assocs. ex rel. Holtkamp v. Parklex Assocs., 841 N.Y.S.2d 220 (table), 15 Misc. 3d 1125(A) (N.Y. Sup. Ct. 2007). It seems to us that a plain reading of the statute does not support this interpretation, but we need not reach that question in this case.

13

appeal to the Appellate Division, as well as the submission of Peter's affidavit representing the August 1993 Agreement as a sham. The district court found that in light of Rosenberg's participation in the negotiations about the August 1993 Agreement and his distribution of the proceeds of the Gruntal litigation in accordance with that agreement, Rosenberg knew both that Peter was not a partner in 27 Whitehall Street Group and that the August 1993 Agreement was valid. Id. at 208.

The district court further found that the other evidence, described above, of "a persistent pattern of unethical behavior," id. at 203, constituted a "chronic, extreme pattern of legal delinquency," Izko Sportswear, 809 N.Y.S.2d at 122, 25 A.D.3d at 532, to the extent (if any) such a finding was required under New York law, see Amalfitano, 428 F. Supp. 2d at 207 n.36.

On appeal, Rosenberg does not appear to challenge the finding that his deceit was intentional, and we assume that it was.

A. Rosenberg's Successful Deceit

The district court concluded that Rosenberg's appeal on Peter's behalf of Justice Gammerman's entry of a default judgment, which included Peter's false affidavit and the erroneous partnership tax returns, successfully deceived the Appellate Division into reversing and remanding the first dismissal by Justice Gammerman. On appeal to us, Rosenberg argues that the district court's conclusion was erroneous because

14

his deceit was not material to the Appellate Division's decision to reverse the entry of default judgment.

First, he contends that only the partnership would have had standing to bring the suit in the Costalas litigation. He argues that the Appellate Division should therefore have affirmed the default judgment on the ground that even if Peter were a partner in 27 Whitehall Street Group, he was not the partnership and did not have standing. Thus Rosenberg argues that his misrepresentations were not material to the Appellate Division's decision because the Appellate Division should have found that Peter lacked standing whether or not he was a partner.

This argument is without merit. The Appellate Division concluded that under certain circumstances Peter might have had standing to bring the claim on his own behalf as a partner. See Costalas, 760 N.Y.S.2d at 422, 305 A.D.2d at 203-04. But had the Appellate Division known that Peter was not a partner, it seems likely -- and there is plainly a sufficient basis for the district court to have found -- that the Appellate Division would have affirmed the dismissal of his suit for lack of standing rather than reversing. The representations made as to the validity of the August 1993 Agreement and Peter's status as a partner were therefore material to the Appellate Division's decision.

Second, Rosenberg contends that the Appellate Division's decision was the result of "genuine documentary evidence in direct conflict" rather than Rosenberg's deceit. By

15

this he means that the Appellate Division correctly determined that there was an issue of fact as to whether Peter remained a partner in 27 Whitehall Street Group because the Appellate Division relied on "genuine documentary evidence" in the form of the partnership tax returns -- which neither Rosenberg nor Peter created -- that erroneously continued to list Peter as a member of the partnership.

This argument is also meritless. If the partnership tax returns had some independent legal significance -- e.g., if they operated to make Peter a member of the partnership despite the August 1993 Agreement to the contrary -- then we might conclude that the Appellate Division's decision was based on a genuine issue of fact as to Peter's membership in the partnership. But the partnership tax returns were no more than potential evidence as to the identity of the members of the partnership. When Rosenberg submitted these partnership tax returns knowing them to be false representations of the partnership membership, he did so seeking to deceive the Appellate Division.

We therefore find no error in the district court's conclusion that Rosenberg is liable under section 487 for intentionally and successfully deceiving the Appellate Division into reversing the entry of default judgment in the Costalas litigation.

B. Certification of the Question of Attempted Deceit

16

Rosenberg's second argument on appeal is that the district court erred in finding that an unsuccessful attempt to deceive a court would support liability under section 487. He points out that his attempts to deceive the trial court were unsuccessful because Justice Gammerman consistently found in favor of the Amalfitanos.

Although, as the district court concluded, Rosenberg did successfully deceive the Appellate Division, the question of the actionability of his attempted deceit on the trial court is not moot. The district court's calculation of damages was based on the cost to the Amalfitanos of defending the Costalas litigation from its inception to final judgment, which therefore covered the period of time in which Rosenberg was attempting (but failing) to deceive Justice Gammerman, but had not yet successfully deceived the Appellate Division into reversing the default judgment. See Amalfitano, 428 F. Supp. 2d at 211-12. We can affirm the judgment of the district court in its entirety only if we conclude that Rosenberg's attempted deceit -- the false allegations in the complaint in the Costalas litigation -- supports a cause of action under section 487 and was the proximate cause of the Amalfitanos' damages in defending the litigation from its inception.

It is not clear from the plain language of section 487 whether an attempted deceit is actionable under the statute, or whether a court would be entitled to find that the costs of defending a lawsuit premised on a misrepresentation are the

17

proximate result of such a misrepresentation. The district court concluded that section 487 would support liability for an attempted deceit. It analyzed the historical context of the statute and the statutory text, and it predicted that New York's highest court would find that section 487 supports a cause of action for an attempted deceit. See id. at 209-11. The district court also imposed damages in the form of the cost of legal fees from the inception of the Costalas litigation and therefore implicitly found that those damages were the proximate result of Rosenberg's attempted deceit.

We think that New York law is unclear as to whether the incurring of costs responding to a complaint which includes a deceitful misrepresentation is to be treated as proximately caused by that misrepresentation. In our view, New York law is also uncertain as to whether section 487 was intended to apply to attempted deceits.

Of course, the district court did not have the authority to certify the questions to the New York Court of Appeals, and it was therefore obligated to make a prediction as to what New York courts would hold under these circumstances. See Indus. Risk Insurers v. Port Auth., 493 F.3d 283, 285 n.1 (2d Cir. 2007). We do have that authority.

"Where unsettled and significant questions of state law will control the outcome of a case, we may certify those questions to the New York Court of Appeals." Colavito v. N.Y. Organ Donor Network, Inc., 438 F.3d 214, 229 (2d Cir. 2006)

18

(internal quotation marks and citation omitted). Certification is discretionary on our part as the certifying court, and the New York Court of Appeals, as the recipient of our certification, has discretion whether or how to respond. Id. "In deciding whether to certify a question we consider: (1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation." O'Mara v. Town of Wappinger, 485 F.3d 693, 698 (2d Cir. 2007).

We conclude that the questions that follow are appropriate for certification.

First, no New York court has, to the best of our knowledge, addressed the question of whether an attempted deceit can form the basis for liability under section 487 or proximately cause damages. Second, it appears to us that the question of how to deter attorney misconduct in connection with litigation is an important issue for the New York courts. Finally, certification would resolve this litigation. We would almost surely affirm the district court's judgment in its entirety if the New York Court of Appeals determines that section 487 permits the award of treble damages for an attempted deceit of the New York courts. But we would need to remand for the district court to recalculate damages if the Court of Appeals reads the statute otherwise.

We therefore certify the following questions to the New York Court of Appeals:

19

(1) Can a successful lawsuit for treble damages brought under N.Y. Jud. Law § 487 be based on an attempted but unsuccessful deceit upon a court by the defendant?

(2) In the course of such a lawsuit, may the costs of defending litigation instituted by a complaint containing a material misrepresentation of fact be treated as the proximate result of the misrepresentation if the court upon which the deceit was attempted at no time acted on the belief that the misrepresentation was true?

We leave it to the New York Court of Appeals, as always, to alter or expand on these questions if and as it sees fit. See id. at 699.

IV. Conclusion

It is hereby ORDERED that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals a Certificate in the form attached, together with a copy of this opinion and a complete set of the briefs, appendices, and record filed by the parties in this Court. This panel will retain jurisdiction to decide the case once we have had the benefit of the views of the New York Court of Appeals, or once that court declines certification. We order the parties to bear equally any fees and costs that may be requested by the New York Court of Appeals.