10-1570-cv
Yankee Gas Servs. Co. v. UGI Utils., Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 13th day of April, two thousand eleven.

PRESENT:  GUIDO CALABRESI,
          REENA RAGGI,
                    *Circuit Judges*,
          JOHN GLEESON,
                    *District Judge*.[*]

-----------------------------------------------------------------------

YANKEE GAS SERVICES COMPANY,
CONNECTICUT LIGHT & POWER COMPANY,
                    *Plaintiffs-Appellants*,

        v.                                          No. 10-1570-cv

UGI UTILITIES, INC.,
                    *Defendant-Appellee*.
-----------------------------------------------------------------------

APPEARING FOR APPELLANTS:    BRUCE  W.  FELMLY (Barry Needleman,
                             Cathryn R. Vaughn, *on the brief*), McLane, Graf,
                             Raulerson & Middleton Professional Association,

---

[*] District Judge John Gleeson of the United States District Court for the Eastern District of New York, sitting by designation.

1

Manchester, New Hampshire.

APPEARING FOR APPELLEE:    JAY N. VARON (Paul Bargren, Michael J. Harwin, Jennifer M. Keas, *on the brief*), Foley & Lardner LLP, Washington, D.C.

Appeal from the United States District Court for the District of Connecticut (Mark R. Kravitz, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court entered on March 31, 2010, is AFFIRMED.

Plaintiffs Yankee Gas Services Company and The Connecticut Light and Power Company ("CL&P"), current owners of the sites of thirteen former manufactured gas plant facilities ("MGPs") in Connecticut, sued defendant UGI Utilities, Inc. ("UGI"), the alleged past operator of the MGPs, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), to recover plaintiffs' costs in responding to MGP pollution from the period 1884 to 1941. Plaintiffs now appeal from a judgment in favor of defendant entered after a bench trial at which the district court determined that UGI was not an operator of nine of the MGPs under the standard set forth in United States v. Bestfoods, 524 U.S. 51 (1998),[1] and that the statute of limitations had run

---

[1] The bench trial covered plaintiffs' claims concerning nine MGPs: the Bristol, Meriden Cooper Street, Middletown, Norwalk, Putnam, Rockville, Waterbury South, Winsted Gay Street, and Willimantic facilities. Before trial, plaintiffs voluntarily withdrew their claims relating to three MGPs, the Meriden South Colony Street, Waterbury Benedict Street, and Winsted Prospect Street facilities. Plaintiffs' claims concerning the final MGP, the Waterbury North facility, were severed from the main action and are to be tried separately.

with respect to two of those nine MGPs, the Norwalk and Willimantic facilities. See Yankee Gas Servs. Co. v. UGI Utils., Inc., 616 F. Supp. 2d 228 (D. Conn. 2009). Because we identify no error of law or fact in the district court's operator determination, we affirm the judgment on that basis and need not address its limitations conclusion.

"We review the district court's findings of fact after a bench trial for clear error and its conclusions of law de novo." Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 38-39 (2d Cir. 2009) (internal quotation marks omitted). In reviewing for clear error, we will not second-guess either the trial court's credibility assessments or its choice among permissible competing inferences. See Amalfitano v. Rosenberg, 533 F.3d 117, 123 (2d Cir. 2008) (internal quotation marks omitted). We review de novo mixed questions of law and fact and the district court's use of facts "to draw conclusions of law, including a finding of liability." Travellers Int'l, A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1575 (2d Cir. 1994). In applying these principles, we assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

CERCLA states that any person or corporation that "owned or operated any facility" from which hazardous materials were released is liable for costs incurred by any other person or corporation to clean up the contamination pursuant to a government-approved plan. 42 U.S.C. § 9607(a)(2), (a)(4)(B); see also id. § 9601(21). While the statute defines the phrase "owner or operator" "only by tautology . . . as 'any person owning or operating' a facility," United States v. Bestfoods, 524 U.S. at 56 (quoting 42 U.S.C. § 9601(20)(A)(ii)), the

3

Supreme Court in <u>Bestfoods</u> construed the term to reference "someone who directs the workings of, manages, or conducts the affairs of a facility," <u>id.</u> at 66. The <u>Bestfoods</u> Court proceeded "[t]o sharpen the definition for purposes of CERCLA's concern with environmental contamination," by explaining that "an operator must manage, direct, or conduct operations <u>specifically related to pollution</u>, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." <u>Id.</u> at 66-67 (emphasis added). As we have observed, this "'sharpen[ed]' construction, while sufficiently broad to extend beyond titular owners and day-to-day operators, nevertheless implies a level of control <u>over the hazardous substances at issue</u>." <u>AMW Materials Testing, Inc. v. Town of Babylon</u>, 584 F.3d 436, 444 (2d Cir. 2009) (emphasis and alteration in original).

With respect to corporate ownership of a polluting facility, <u>Bestfoods</u> signaled that the parent or subsidiary status of a corporation is essentially irrelevant to "operator" analysis:

> Under the plain language of the statute, any person who operates a polluting facility is directly liable for the costs of cleaning up the pollution. <u>See</u> 42 U.S.C. § 9607(a)(2). This is so regardless of whether that person is the facility's owner, the owner's parent corporation or business partner, or even a saboteur who sneaks into the facility at night to discharge its poisons out of malice. If any such act of operating a corporate subsidiary's facility is done on behalf of a parent corporation, the existence of the parent-subsidiary relationship under state corporate law is simply irrelevant to the issue of direct liability.

<u>Id.</u> at 65; <u>see also</u> <u>id.</u> at 68 ("The question is not whether the parent operates the subsidiary,

4

but rather whether it operates the facility, and that operation is evidenced by participation in the activities of the facility, not the subsidiary." (internal quotation marks omitted)). The Court emphasized, however, that "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries," and that "nothing in CERCLA purports to reject this bedrock principle." Id. at 61-62 (internal quotation marks omitted). Bestfoods further described the proper application of CERCLA's concept of an "operator" in the corporate parent-subsidiary context:

> [A] parent can be held directly liable when the parent operates the facility in the stead of its subsidiary or alongside the subsidiary in some sort of a joint venture. . . . [N]orms of corporate behavior (undisturbed by any CERCLA provision) are crucial reference points. . . . [W]e may refer to them in distinguishing a parental officer's oversight of a subsidiary from such an officer's control over the operation of the subsidiary's facility. Activities that involve the facility but which are consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures, should not give rise to direct liability. The critical question is whether, in degree and detail, actions directed to the facility by an agent of the parent alone are eccentric under accepted norms of parental oversight of a subsidiary's facility.

Id. at 71-72 (citations, alteration, and internal quotation marks omitted).

With these controlling principles in mind, we have reviewed the trial record, the district court's meticulous and well-reasoned opinion, and the parties' arguments on appeal,

5

and we identify no legal error or clear factual error in the determination that UGI was not an operator of the subject MGPs during the period in question. Plaintiffs have marshaled an impressive volume of contemporaneous corporate records – including board and committee meeting minutes, correspondence, and internal reports – illustrating the extent of UGI's involvement in the business of its Connecticut subsidiaries. As the district court reasonably found, this evidence shows that UGI "was a vigilant parent that conducted detailed – yet not eccentric – oversight of the operations of its subsidiaries in Connecticut"; "provided assistance to CL&P from time to time when CL&P requested it"; and "carefully oversaw the operations of CL&P, consistent with UGI's status as a corporate parent." Yankee Gas Servs. Co. v. UGI Utils., Inc., 616 F. Supp. 2d at 233. Such assistance did not, as a matter of law, equate to managing, directing, or operating the facilities in the stead of CL&P or in some sort of joint venture with it. See id. Accordingly, we identify no error of law or fact in the district court's finding

> that Plaintiffs have failed to prove by a preponderance of the evidence that UGI and CL&P conducted operations at the MGPs in some sort of joint venture or joint undertaking, and that UGI's involvement with the individual MGPs was consistent with its role as an investor and shareholder of, and consultant to, CL&P.

Id. at 257; see also id. at 245 ("The Court concludes, and finds as a fact, that there was nothing eccentric, or contrary to ordinary corporate norms as recognized in Bestfoods, in the relationship between UGI, the parent, and its subsidiary CL&P, or the subsidiaries that owned the Norwalk MGP before CL&P."); id. at 247 ("[T]he Court finds as a fact that UGI

6

did not operate the Norwalk facility between 1900 and 1906, either in the stead of its subsidiaries or in some sort of a joint venture alongside its subsidiaries."); id. at 247-48 ("The Court finds as a fact that there was nothing eccentric or abnormal about UGI's interaction or involvement with CL&P, or the MGPs owned by CL&P, from 1917 to 1941."); id. at 256 ("[T]he Court finds as a fact that it was CL&P (and CL&P alone) that had responsibility for creating and implementing those budgets [i.e., budgets approved by UGI] and managing and directing operations of its facilities, including the MGPs.").

We have considered plaintiffs' remaining arguments on appeal and conclude that they are without merit. For the foregoing reasons, the March 31, 2010 judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

7