**Ames RAY, Plaintiff,**

v.

**Donald WATNICK, Julie Stark, and John Does 1–5, Defendants.**

**15 Civ. 10176**

United States District Court, S.D. New York.

Signed 04/26/2016

As Amended May 4, 2016

Frank Victor Raimond, New York City Law Department, New York, NY, for Plaintiff.

Janice J. Digennaro, Avigael Cymrot Fyman, Rivkin Radler LLP, Uniondale, NY, for Defendants.

*OPINION AND ORDER*

JED S. RAKOFF, UNITED STATES DISTRICT JUDGE.

On December 31, 2015, plaintiff Ames Ray filed suit in this Court against defendants Donald Watnick and Julie Stark, who are attorneys representing Mr. Ray's ex-wife, Christina Ray, in an underlying state court matter. *See* Complaint

("Compl."), Dkt. 1, ¶ 1.[1] Ames claimed that defendants Watnick and Stark had made or consented to the making of deceitful statements during the course of that underlying litigation, in violation of New York Judiciary Law § 487. *See id.* ¶ 3. On February 26, 2016, defendants Watnick and Stark moved to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). *See* Notice of Motion, Dkt. 13.[2] At oral argument on April 4, 2016, the Court indicated that it would grant defendants' motion to dismiss and noted that final judgment would be entered upon issuance of an Opinion explaining the Court's reasoning. *See* Transcript of Oral Argument dated April 4, 2016 ("Tr.") at 13:6–8, 14:2–5. This is the promised Opinion and Order.

In ruling on a motion to dismiss under Fed.R.Civ.P.12(b)(6),[3] the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. *Town of Babylon v. Fed. Hous. Fin. Agency,* 699 F.3d 221, 227 (2d Cir.2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted).

In this case, the relevant allegations of the Complaint are as follows. Christina, as noted, is Ames's former wife. *See* Compl. ¶ 11. She divorced Ames in 1977, but had business dealings with him until 1993. *See id.* Ames sued Christina in New York State Supreme Court in 1998, seeking damages for breach of a series of contracts in which Christina allegedly assumed certain obligations to Ames that she later failed to pay. *See id.* ¶¶ 12–14. The Law Offices of Donald Watnick became Christina's attorney of record in or about March 2012. *See id.* ¶ 15. The Complaint then describes eight allegedly deceitful statements in court papers filed with the New York State Supreme Court and Ap-

---

1. To avoid confusion, the Court will refer to Mr. Ray as "Ames" and to Ms. Ray as "Christina."

2. The Complaint alleged that this Court has diversity jurisdiction, since Mr. Ray is a citizen of Texas and defendants Watnick and Stark are citizens of New York, and damages "at least equal or exceed[ ] the jurisdictional limit of this court." *See* Compl. ¶¶ 6–9; Prayer for Relief. Although defense counsel claimed at oral argument that no strictly jurisdictional issue had been raised by defendants' motion to dismiss, *see* Tr. 2:17–21, defendants hinted in their briefs at what seems to be an issue of the Court's subject-matter jurisdiction—specifically, that any legal fees plaintiff had incurred in responding to defendants' allegedly deceitful statements "would surely fall below this Court's monetary jurisdictional threshold needed to support diversity jurisdiction." Defendants Donald Watnick and Julie Stark's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint ("Def.Br.") at 22 n.17. Additionally, of course, the Court has "an independent obli-

gation to determine whether subject-matter jurisdiction exists." *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 501, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). The Court hereby determines that it can exercise diversity jurisdiction, since it does not "appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Ocean Ships, Inc. v. Stiles,* 315 F.3d 111, 115 (2d Cir.2002) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938)).

3. As stated at oral argument, the Court declines to convert this motion to one for summary judgment, as plaintiff appears to request. *See* Tr. 3:4–12; Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl.Opp.Br.") at 3. In evaluating a motion to dismiss, however, the Court may consider state court records and other documents that the Complaint references and relies on. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002); *Carvalho v. Stevens,* No. 12–cv–128, 2013 WL 3742532, at *1 (S.D.N.Y. July 17, 2013).

pellate Division that defendants purportedly made or consented to while knowing the statements were untrue and intending to deceive the courts in order to gain an advantage in litigation. *See id.* ¶¶ 17–49. However, as to each of these statements, plaintiff's allegations of intentional deceit are doubtful on their face.

■ The first two statements at issue appeared in a brief that defendant Watnick filed on January 25, 2013 in opposition to plaintiff's motion *in limine* to preclude the admission of Christina's expert report into evidence at trial. *See id.* ¶¶ 19–21. In this brief, Watnick stated that "[t]he third quarrel Dr. Kirstein has with the Report is that his review of the evidence does not reveal physical abuse. Clearly, Dr. Kirstein missed plaintiff's admission in his deposition that he physically abused Christina and that she was fearful of him." In the same brief, Watnick stated that "as this Court recognized, plaintiff also admits the existence of oppressive circumstances and that he knew Christina feared him." *See* Compl. ¶¶ 21–22, 29. According to the Complaint, however, Ames never admitted to physically abusing Christina, and defendant Watnick had no evidence that plaintiff admitted that Christina was afraid of Ames or that there existed oppressive circumstances. *See id.* ¶¶ 23, 31.

However, defendant Watnick, in making these statements about physical abuse and oppressive circumstances, cited to an opinion written by Judge Ramos, who presided over the underlying state court litigation.

*See* DiGennaro Declaration, Exhibit N, Dkt. 14–14, at 8–9, 12; DiGennaro Declaration, Exhibit D, Dkt. 14–4. In that Opinion, Judge Ramos stated as follows:

> Underlying these issues are [Christina's] disturbing allegations of [Ames's] oppressive behavior, which [Christina] contends forced her to sign the documents and agreements. These allegations of oppressive circumstances are credible, given [Ames's] admission in his deposition that he physically abused her "maybe to alleviate some fear she had about what I might do."

DiGennaro Declaration, Exhibit D, at 3. Even assuming *arguendo* that Judge Ramos was himself incorrect in his construction of Ames' deposition, how can it be plausibly alleged that defendant Watnick, in citing and stating that same construction back to the same judge, was acting deceitfully? [4]

Similar deficiencies in plaintiff's allegations arise when considering the next three allegedly deceitful statements, which relate to documents that plaintiff calls a "material confession of judgment" and a "letter agreement" (and which defendants label the "Confession" and the "Penalty Letter"). *See* Compl. ¶ 35. On December 5, 2012, in a written submission in support of a motion seeking spoliation sanctions, defendants stated that "Ames produced only one letter that preceded the date of the Confession—the unsigned Feb. 17, 1993 letter about the Confession and that stated that it was from Christina to Alkalay. [5]

---

4. Plaintiff argues that the New York Appellate Division, First Department had reversed Judge Ramos's decision, and so "the trial court's finding [was] a nullity." *See* Pl. Opp. Br. at 5. However, Judge Ramos's statements about oppressive circumstances and physical abuse were made in the part of his decision denying plaintiff's motion for summary judgment, and it was Judge Ramos's grant of summary judgment to defendant, not his denial of summary judgment to plaintiff, that was

appealed. *See* DiGennaro Declaration, Exhibit D, at 3/ DiGennaro Declaration, Exhibit E, Dkt. 14–5. Furthermore, the Appellate Division noted that Christina's claim of duress was not at issue on appeal. *See* DiGennaro Declaration, Exhibit E, at 3.

5. Alkalay was plaintiff's attorney in the underlying state court action, and he had previously represented both Christina and Ames. *See* Def. Br. at 4; DiGennaro Declaration, Exhibit

Conspicuously absent from Ames's and Al-kalay's document productions are any drafts of the Confession, written communications about the Confession or notes about its drafting or its enforcement." *See id.* ¶ 36. In the same submission, defendants also stated that "Ames produced no documents relating to [the Penalty Letter's] creation." *See id.* Furthermore, defendant Watnick later repeated the same statement in his brief on appeal of the trial court's order granting spoliation sanctions. *See id.* ¶ 41.

Plaintiff Ames claims that these three statements were false and deceitful because he "did produce documents relating to both the confession of judgment and Penalty Letter in controversy, including their creation." *Id.* ¶ 37. A review of the underlying state court documents upon which the Complaint relies, however, makes clear that, read in context, Watnick's above-quoted statements were directed at plaintiff's failure to produce documents related specifically to the *creation* of the Confession of Judgment and Penalty Letter. *See* DiGennaro Declaration, Exhibit F, Dkt. 14–6, at 9. The documents plaintiff claims to have produced do not appear to be related to the creation of these instruments (other than the February 17, 1993 letter that Watnick acknowledged plaintiff had produced). *See* DiGennaro Declaration, Exhibit F, at 9; DiGennaro Declaration, Exhibit I, Dkt. 14–9, at 6–7; DiGennaro Declaration, Exhibit J, Dkt. 14–10, at 3. At worst, there is a reasonable disagreement over the context of Watnick's statements, but nothing like a plausible allegation that the statements were the product of intentional deceit.

The same point applies to the sixth allegedly deceitful statement, which concerned files in a case that both of the Rays

had brought against a building contractor, John Salomon. *See* Compl. ¶ 38. The statement in question, filed in Christina's December 5, 2012 brief seeking spoliation sanctions, was that "without [the Salomon Action] files, Christina is unfairly denied evidence … The prejudice here is especially severe because there are no documents that address these issues and plaintiff's attorneys had access to the Salomon Action file." *See id.* ¶ 38. But as defendants point out, the wider context of this statement is as follows:

> Without these files, Christina is unfairly denied evidence that could allow her to prove that the alleged sale of the House was a sham and that could be critical in cross-examining Ames and/or Alkalay. The prejudice here is especially severe because there are no documents that address these issues and plaintiff's attorney had access to the Salomon Action file while that case still was ongoing.

DiGennaro Declaration, Exhibit F, at 23. Though plaintiff now claims (as he did in the underlying state court litigation) that he did produce the relevant documents, *see* DiGennaro Declaration, Exhibit J, at 3; Pl. Opp. Br. at 8, he does not deny that, as Judge Ramos found in granting spoliation sanctions against plaintiff, no litigation hold was placed on Alkalay's litigation file on the matter. *See* DiGennaro Declaration, Exhibit G, Dkt. 14–7, at 12–15. Even if plaintiff is correct to assert that documents "that address these issues" were produced, nothing about this dispute gives rise to an inference that defendants' statements were intentionally false. The fact that Judge Ramos's ruling granting spoliation sanctions was reversed by the Appellate Division, *see* Pl. Opp. Br. at 9; DiGennaro Declaration, Exhibit V, Dkt. 14–22,

G, Dkt. 14–7 (Transcript of Proceedings Be-

fore the Honorable Charles E. Ramos).

does not suggest that Christina's counsel engaged in deceit.

The seventh and eighth allegedly deceitful statements concerned Ames's payment of Christina's credit card debt. *See id.* ¶ 46. In a brief filed in the underlying litigation on January 25, 2013, Watnick stated that "although plaintiff seeks to recover monies he paid toward Christina's credit card debts, he failed to produce a shred of documentary evidence that he ever made such payments." *See id.* ¶ 46. Defendant Watnick also stated (in a brief filed on December 5, 2012, *see* DiGennaro Declaration, Exhibit F, at 23) that "no such files have been produced and plaintiff's failure to preserve them denies Christina evidence that would directly bear upon whether Ames paid this credit card debt." *See id.* ¶ 46.[6] The Complaint contends that plaintiff did produce documents relating to his payment of Christina's credit card debts, and that defendants' statements were deceitful. *See id.* ¶¶ 47, 48–49.

However, plaintiff's allegation of intentional deceit with respect to these statements is, once again, highly implausible.[7] For example, in court proceedings in front of Judge Ramos, plaintiff's counsel was asked whether there was "any substantiation that your client paid a credit card bill on the account of Christina Ray," and answered "[t]here is testimony to that effect"—with no mention of documentary evidence. *See* DiGennaro Declaration, Exhibit O, Dkt. 14–15, at 37. In addition, plaintiff cites the Appellate Division's statement that

[d]efendant's argument that plaintiff offered no evidence that he paid these debts is unavailing, as the agreement defendant signed expressly states that she alone accumulated these debts on specific credit cards in plaintiff's name. Defendant, who has the burden of demonstrating prima facie entitlement to summary judgment ... offered no evidence of a default by plaintiff on these debts, or that he does not remain liable for them.

*See* Pl. Opp. Br. at 10, citing *Ray v. Ray,* 61 A.D.3d 442, 876 N.Y.S.2d 383, 385 (1st Dep't 2009). But this statement shows at most that there was an issue of material fact with respect to whether Ames paid Christina's credit card debts. It does not remotely show that Christina's attorneys acted with deceitful intent in arguing that he did not. In sum, even if plaintiff were able to show that defendants' statements about Christina's credit card debt were unfounded, plaintiff has not provided sufficient grounds for any finding of deceitful intent.

 To make out a claim under New York Judiciary Law § 487, a plaintiff must show, at a bare minimum, "that defendants: (1) are guilty of deceit or collusion, or consent to any deceit or collusion; and (2) had an intent to deceive the court or any party." *Iannazzo v. Day Pitney LLP,* No. 04–cv–7413, 2007 WL 2020052, at *11 (S.D.N.Y. July 10, 2007). As the foregoing examination of the underlying court documents on which plaintiff's allegations are based demonstrates, plaintiff has wholly failed to make out a plausible claim that

---

6. As defendants point out, the end of this sentence reads "(which, as noted, the IRS said there was no substantiation for)." *See* Def. Br. at 12 n.14; DiGennaro Declaration, Exhibit F, at 23.

7. The Court does not view as either relevant or sufficient, for the purposes of supporting a plausible claim of deceitful intent, plaintiff's assertion that if the Court converts the instant motion to one for summary judgment, "Plaintiff is happy to supply" documents showing that he paid Christina's credit card debt. *See* Pl. Opp. Br. at 10 & n.9.

defendants' statements were intentionally deceitful. On this ground alone, the Complaint must be dismissed.[8]

Independently, moreover, even assuming *arguendo* that at least one of the allegedly false statements had been adequately alleged to be intentionally deceitful, the Complaint would still have to be dismissed for failure to adequately allege that the deceit was extreme or egregious.[9] To be sure, the requirement that the deceit be extreme or egregious does not appear on the face of the statute. Specifically, New York Judiciary Law § 487 simply reads, in relevant part: "An attorney or counselor who: 1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; . . . Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action." N.Y. Judiciary Law § 487.

However, numerous New York State courts interpreting the statute, as well as federal courts construing the state court decisions, have concluded that liability attaches under these Statutes only if the deceit is "extreme" or "egregious." *See, e.g., Savitt v. Greenberg Traurig, LLP*, 126 A.D.3d 506, 5 N.Y.S.3d 415, 416 (1st Dep't 2015); *Englert v. Schaffer*, 61 A.D.3d 1362, 877 N.Y.S.2d 780, 781 (4th Dep't 2009); *Nason v. Fisher*, 36 A.D.3d 486, 828 N.Y.S.2d 51, 52 (1st Dep't 2007) ; *Donaldson v. Bottar*, 275 A.D.2d 897, 715 N.Y.S.2d 168, 169 (4th Dep't 2000); *Ulrich v. Hausfeld*, 269 A.D.2d 526, 704 N.Y.S.2d

495, 495 (2d Dep't 2000); *Schindler v. Issler & Schrage, P.C.*, 262 A.D.2d 226, 692 N.Y.S.2d 361, 362 (1st Dep't 1999); *Gonzalez v. Gordon*, 233 A.D.2d 191, 649 N.Y.S.2d 701, 702 (1st Dep't 1996); *Alliance Network, LLC v. Sidley Austin LLP*, 43 Misc.3d 848, 987 N.Y.S.2d 794, 803 (N.Y.Sup.Ct.2014); *Wiggin v. Gordon*, 115 Misc.2d 1071, 455 N.Y.S.2d 205, 207, 209 (N.Y.Civ.Ct.1982). *See also Sabatini Frozen Foods, LLC v. Weinberg, Gross & Pergament, LLP*, No. 14–CV–02111, 2015 WL 5657374, at *5 (E.D.N.Y. Sept. 23, 2015); *O'Callaghan v. Sifre*, 537 F.Supp.2d 594, 596 (S.D.N.Y.2008). The reasons for such a limitation on § 487 liability are weighty:

> By confining the reach of the statute to intentional egregious misconduct, this rigorous standard affords attorneys wide latitude in the course of litigation to engage in written and oral expression consistent with responsible, vigorous advocacy, thus excluding from liability statements to a court that fall "well within the bounds of the adversarial proceeding." *Lazich v. Vittoria & Parker*, 189 A.D.2d 753, 592 N.Y.S.2d 418, 419 (2d Dep't 1993). Under this threshold, an action grounded essentially on claims that an attorney made meritless or unfounded allegations in state court proceedings would not be sufficient to make out a violation of § 487.

*O'Callaghan*, 537 F.Supp.2d at 596. If § 487 were to cast too wide a net, it would chill proper advocacy and encourage parties to use § 487 suits as tactics to stall

---

8. Nor did plaintiff, either in his papers or in oral argument, make out any plausible claim that he could repair these deficiencies through an expanded pleading, and hence the Complaint must be dismissed with prejudice.

9. Defendants also argue that the instant action is an improper collateral attack on the pending state court proceedings, *see* Defs. Br.

at 24, and that defendant Julie Stark should be dismissed from the action because plaintiff makes insufficient allegations about her involvement in defendants' purported deceit, *see* Defs. Br. at 2. While the Court need not reach these points, it notes that they too present grounds for dismissal.

and gain leverage over their opponents, with highly detrimental effects on the fair and efficient progress of litigation. *See Alliance Network*, 987 N.Y.S.2d at 803.

Further reinforcing the conclusion that liability under § 487 is reserved for extreme or egregious cases is the fact that Judiciary Law § 487 has its "origin in the criminal law of England," and thus, for this statute, "the more appropriate context for analysis is not the law applicable to comparable civil torts but rather criminal law." *Amalfitano v. Rosenberg*, 12 N.Y.3d 8, 874 N.Y.S.2d 868, 903 N.E.2d 265, 268 (2009).[10] Consequently, § 487 "must be strictly construed." *Kaye Scholer LLP v. CNA Holdings, Inc.*, No. 08–CV–5547, 2010 WL 1779917, at *2 (S.D.N.Y. Apr. 28, 2010). This supports a reading of the statute that reserves liability only for the egregious or extreme case.

Plaintiff argues, however, that the Second Circuit's decision in *Amalfitano v. Rosenberg*, 533 F.3d 117 (2d Cir. 2008) undermines the "extreme" or "egregious" standard under § 487. *See* Pl. Opp. Br. at 11–14; Tr. 9:8–25. In *Amalfitano*, the Second Circuit stated that § 487

applies to any oral or written statement related to a proceeding and communicated to a court or party with the intent to deceive.... It would appear that some courts in New York have imposed an additional prerequisite to recovery: that the plaintiff in a section 487 action show "a chronic and extreme pattern" of legal delinquency by the defendant.... That requirement appears nowhere in the text of the statute, however, and other courts have found attorneys liable under the statute for a single intentionally deceitful or collusive act.

*Amalfitano*, 533 F.3d at 123–24. But even assuming *arguendo* that *Amalfitano* stands for the proposition that no "pattern" of deceitfulness or "chronic" deceit is necessary to state a claim under § 487,[11] *Amalfitano* does not erase the requirement—elaborated in numerous New York state cases—that a deceitful statement actionable under this statute be "extreme" or "egregious." *Amalfitano*, at most, stands for the proposition that a single deceitful statement can trigger § 487 liability. *See Sabatini*, 2015 WL 5657374, at *5 ("the statute [§ 487] itself supports liability for a 'single intentionally deceitful or collusive

10. *Amalfitano v. Rosenberg* began as a federal suit in the Southern District of New York. *See Amalfitano v. Rosenberg*, 428 F.Supp.2d 196, 198 (S.D.N.Y. 2006) (Buchwald, J.). Rosenberg, an attorney, represented the Amalfitanos' adversary in underlying state court litigation. Judge Buchwald, after trial, issued findings of fact and conclusions of law determining that Rosenberg had violated § 487. Rosenberg then appealed to the Second Circuit, which affirmed the district court's conclusion that Rosenberg had violated § 487, but certified to the New York Court of Appeals two questions that would affect the damages for which Rosenberg was liable. *See Amalfitano v. Rosenberg*, 533 F.3d 117, 126 (2d Cir. 2008). The New York Court of Appeals answered these certified questions in *Amalfitano v. Rosenberg*, 12 N.Y.3d 8, 874 N.Y.S.2d 868, 903 N.E.2d 265, 268 (2009). However, all subsequent references below to

*"Amalfitano"* refer to the Second Circuit case.

11. It is not by any means clear that *Amalfitano* explicitly rejects the "chronic and extreme pattern" requirement for an actionable statement under § 487. *See Tacopina v. Kerik*, No. 14–cv–749, 2016 WL 1268268, at *6 n. 7 (S.D.N.Y. Mar. 31, 2016). Nor, of course, does the authority to interpret the statute ultimately rest with the federal courts, but with the New York State courts. Indeed, the First Department, for its part, has cited the "chronic" and "pattern" language after *Amalfitano*. *See, e.g., Emery v. Parker*, 107 A.D.3d 635, 968 N.Y.S.2d 480, 481 (1st Dep't 2013) ("Defendants did not engage in conduct amounting to a chronic and extreme pattern of legal delinquency to support such a [§ 487] claim.") (internal quotation marks omitted).

act,' if sufficiently egregious.") (quoting *Amalfitano*, 533 F.3d at 123); *see also Trepel v. Dippold*, No. 04–cv–8310, 2005 WL 1107010, at *4 (S.D.N.Y. May 9, 2005) ("A single act or decision, if sufficiently egregious and accompanied by an intent to deceive, is sufficient to support [§ 487] liability."). But *Amalfitano* does not even purport to address, let alone remove, the threshold requirement that the deceitful statement, to be actionable, must be extreme or egregious.

◼ To be sure, there appears to be no ruling from the New York Court of Appeals on whether deceitful statements must be "extreme" or "egregious" in order to be actionable under § 487.[12] And plaintiff cites to decisions of the Second and Fourth Appellate Departments to support its position that an intent to deceive—without any further "extreme" or "egregious" requirement—suffices for a plaintiff to state a claim under § 487. *See* Pl. Opp. Br. at 12, citing *Duszynski v. Allstate Ins. Co.*, 107 A.D.3d 1448, 967 N.Y.S.2d 796, 798 (4th Dep't 2013); *Dupree v. Voorhees*, 102 A.D.3d 912, 959 N.Y.S.2d 235, 236 (2d Dep't 2013). However, even after *Amalfitano*, the First Department has repeatedly deployed the "extreme" or "egregious" standards, *see, e.g.*, *Facebook, Inc. v. DLA Piper LLP*, 23 N.Y.S.3d 173, 178, 134 A.D.3d 610 (1st Dep't 2015); *Savitt*, 5 N.Y.S.3d at 416; *Strumwasser v. Zeiderman*, 102 A.D.3d 630, 958 N.Y.S.2d 395, 396 (1st Dep't 2013), and the Fourth Department has, on at least one occasion, done so as well. *See Englert*, 877 N.Y.S.2d at 781.

◼ Under the *Erie* doctrine, a federal court sitting in diversity applies the law of the state in which it sits, and "the views of the state's highest court with respect to state law are binding on the federal courts." *Wainwright v. Goode*, 464 U.S. 78, 84, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983); *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 199 (2d Cir.2003) (internal quotation marks omitted). "In doing so, ... we must give proper regard to the decisions of a state's lower courts," and "[w]e may also consider the decisions of federal courts construing state law." *Phansalkar*, 344 F.3d at 199 (internal citation and quotation marks omitted).

Here, while New York's intermediate appellate courts have arguably taken differing positions on the standards for § 487 claims, there is ample authority for the "extreme" or "egregious" position, and several federal district courts in New York have continued to apply the heightened standard. *See Sabatini*, 2015 WL 5657374 at *5; *Tacopina*, 2016 WL 1268268 at *6; *Burton v. Krohn (In re Swift)*, 2016 WL 355515, at *5–6, 2016 Bankr. LEXIS 262, at *15 (Bankr.E.D.N.Y. Jan. 27, 2016). In light of the extensive New York precedent supporting a stringent reading of § 487 and the compelling policy reasons for this position (*see supra*), this Court sees no difficulty in predicting that the New York Court of Appeals would adopt the "ex-

---

12. Regrettably, New York law, unlike, for example, the law of Delaware, does not provide for such issues to be certified to the state's highest court by a federal district court, but only by a federal court of appeals. *See Indus.* *Risk Insurers v. Port Auth. of N.Y. & N.J.*, 493 F.3d 283, 285 n. 1 (2d Cir.2007); *In re Hechinger Inv. Co. of Delaware*, 280 B.R. 90, 93 (D.Del.2002).

**32**

treme" or "egregious" requirement for actionable § 487 claims.

 Turning to the instant case, the allegedly deceitful statements do not rise to the level of "egregious" or "extreme"; indeed, the Complaint does not plausibly so allege.[13] Rather, plaintiff, although making a half-hearted (and unconvincing) argument in his opposition brief that the statements here alleged are extreme and egregious, *see* Pl. Opp. Br. at 14–15, principally argues that such is not required. But since this Court concludes that New York law does so require, this provides a second, independent ground for dismissing the Complaint, in addition to the failure to plausibly allege deceitful intent, as previously discussed.

In fact, the instant case exemplifies the perils resulting from the pursuit of implausible § 487 claims. The underlying state court lawsuit is now in a ready-for-trial posture after eighteen long and hard-fought years of litigation. *See* Def. Br. at 1. To permit plaintiff, at this juncture, to delay the proceedings by further litigating the alleged deceitfulness of opposing counsel's statements would be to risk rewarding tactics that instead ought to be deterred. Parties should not be encouraged to parlay reasonable disagreements arising in adversarial litigation into factually-intensive investigations of opposing counsel's conduct.

For all the foregoing reasons, the Clerk of the Court is hereby instructed to promptly enter judgment dismissing the Complaint with prejudice.

SO ORDERED.

---

**13.** Compare the instant case, for example, to *Armstrong v. Blank Rome LLP*, 2 N.Y.S.3d 346, 126 A.D.3d 427 (1st Dep't 2015) (plaintiff stated a claim under § 487 where defendant attorneys allegedly "concealed a conflict of interest that stemmed from defendant law firm's attorney-client relationship with Morgan Stanley while simultaneously representing plaintiff in divorce proceedings against her ex-husband, a senior Morgan Stanley executive, who participated in Morgan Stanley's decisions to hire outside counsel"); *Kurman v. Schnapp*, 73 A.D.3d 435, 901 N.Y.S.2d 17, 18 (1st Dep't 2010) (plaintiff stated a claim under § 487 where he alleged that "defendant deceived or attempted to deceive the court

with a fictitious letter addressed to him from the former licensing director of the City's Taxi and Limousine Commission (TLC) that stated, inter alia, that plaintiff was under a lifetime ban on owning any licenses with the TLC"); *Izko Sportswear Co. v. Flaum*, 25 A.D.3d 534, 809 N.Y.S.2d 119, 121 (2d Dep't 2006) (plaintiff withstood a motion for summary judgment on a § 487 claim, where defendant attorneys affirmed that they had no connection to bankrupt plaintiff's creditors, though they had allegedly previously represented one of plaintiff's creditors and revealed to this creditor, unbeknownst to plaintiff, that plaintiff was contemplating declaring bankruptcy).