■ HUNTS POINT TERMINAL PRODUCE COOPERATIVE ASSOCIATION, INC Petitioner-Respondent v NEW YORK CITY ECONOMIC DEVELOPMENT CORPORATION, et al. Respondents, and BALDOR SPECIALTY FOODS, INC., Appellant. [863 NYS2d 191]—

Judgment, Supreme Court, Bronx County (Lucy Billings, J.), entered November 29, 2006, which, to the extent appealed from, denied respondent Baldor's cross motion for sanctions, unanimously affirmed, with costs.

Respondent New York City Economic Development Corporation (EDC) awarded a lease opportunity within the Hunts Point Food Distribution Center to Baldor. Petitioner's challenge to that award as arbitrary, capricious and an abuse of discretion was not frivolous within the meaning of 22 NYCRR 130-1.1 (a), in that it did not manifest the extreme behavior that courts have traditionally found to merit such sanctions (*see e.g. Tsabbar v Auld*, 26 AD3d 233 [2006]).

Petitioner did prevail on its first cause of action—that EDC had engaged in a "sham" bidding process—after a 13-day trial, and was reversed by this Court only on the issue of standing (36 AD3d 234 [2006], *lv denied* 8 NY3d 827 [2007]). It was not unreasonable, however, for petitioner, as one of the losing bidders, to assert standing in challenging the EDC determination (*see Matter of Transactive Corp. v New York State Dept. of Social Servs.*, 92 NY2d 579, 587 [1998]). Concur—Nardelli, J.P., Williams and Sweeny, JJ.

Catterson, J., concurs in a separate memorandum as follows: I concur with the majority's view that there are no grounds upon which sanctions could be imposed against petitioner. I write separately on the issue of respondent Baldor's ad hominem attack on petitioner's counsel in the underlying CPLR article 78 proceeding.

In the context of the instant sanctions application, Baldor personally attacked the Cooperative's counsel, asserting that he had "systematically brought similar baseless lawsuits" against city agencies "nearly identical" in their allegations to this case.

The mere fact that counsel often litigates before city agencies is irrelevant to the merits of this case. Furthermore, the Cooperative accurately points out that counsel was recently victorious against the City in litigation that alleged a sham bidding

process with respect to the New Fulton Fish Market, a theory counsel pursued vigorously in this case.

While there is clearly animus between the parties, I find the attacks on counsel for vigorously representing his client nothing less than reprehensible and antithetical to our justice system. The Cooperative challenged what it alleged was a "sham" bidding process based on the need to renovate the "antiquated" Terminal Market, and the alleged economic decline that would result from "unfair" competition with Baldor. Baldor accused the Cooperative of efforts to thwart the expansion of a "non-union" employer. While the merits of these allegations were sharply in dispute and heavily litigated, the fact remains that, based on the record, the Cooperative's claims were not patently false, or solely intended to harass Baldor.

Indeed, we reversed the original trial court's ruling solely on the basis of the Cooperative's standing to challenge a decision of the New York City Economic Development Corporation (hereinafter referred to as EDC) (36 AD3d 234 [2006], *lv denied* 8 NY3d 827 [2007]). That ruling established for the first time that EDC, as a not-for-profit corporation under contract to the City, was not bound by our previous holding in *Matter of Madison Sq. Garden, L.P. v New York Metro. Transp. Auth.* (19 AD3d 284 [2005], *lv dismissed* 5 NY3d 878 [2005]). I see nothing in the then-existing case law that would have prohibited the Cooperative's counsel from advancing the arguments he vigorously made in the original article 78 proceeding.