■ AMES RAY, Appellant, v CHRISTINA RAY, Respondent. [876 NYS2d 383]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered March 11, 2008, which, to the extent appealed from as limited by the briefs, granted defendant's motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, the motion denied and the complaint reinstated.

The court improperly dismissed the claim for $532,288.10, which was the core of the first cause of action, on the ground that it was contained in a confession of judgment that was not filed within the three years required by CPLR 3218. While failure to file this document would render it void as a confession of judgment, it did not extinguish the underlying debt (*see Reliance Ins. Co. v Brown*, 59 AD2d 968, 969 [1977]).

The court also improperly dismissed so much of the first cause of action as sought recovery of some $99,860 in credit card debt for which defendant had expressly agreed, in writing, to reimburse plaintiff. At oral argument, the court specifically found defendant's arguments against this debt unavailing and denied this aspect of her motion. However, without reference to this debt in its written decision, the court nonetheless summarily dismissed the entire cause of action. Defendant's argument that plaintiff offered no evidence that he paid these debts is unavailing, as the agreement defendant signed expressly states that she alone accumulated these debts on specific credit cards in plaintiff's name. Defendant, who has the burden of demonstrating prima facie entitlement to summary judgment (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851 [1985]), offered no evidence of a default by plaintiff on these debts, or that he does not remain liable for them. Therefore, she has failed to carry her burden of demonstrating entitlement to summary judgment on this issue.

The court also improperly dismissed so much of plaintiff's first cause of action as claimed nearly $19,000 from a liquidated damages clause in an agreement signed by defendant, by which she agreed to provide plaintiff with timely financial statements as a result of her default on some $500,000 of apparent debt, and to pay "at least an additional $50" for each day that such statements were late. The statement in the agreement that this

$50 per day "shall not be indicative of the actual damage" is not an admission that it bears no reasonable relationship to the actual damages, but appears to be no more than a recognition of the fact that such liquidated damages may only be enforced when the actual damages are difficult or impossible to ascertain (*see Truck Rent-A-Ctr. v Puritan Farms 2nd*, 41 NY2d 420, 425 [1977]). Defendant correctly notes that there is no evidence that this liquidated damages amount bears a reasonable relationship to the actual damages plaintiff suffered. However, there is also no evidence that it does not. "The burden is on the party seeking to avoid liquidated damages . . . to show that the stated liquidated damages are, in fact, a penalty," and to "demonstrate either that damages flowing from [the breach] were readily ascertainable at the time [the parties] entered into their . . . agreement, or that the [liquidated damages] fee is conspicuously disproportionate to these foreseeable losses" (*JMD Holding Corp. v Congress Fin. Corp.*, 4 NY3d 373, 380 [2005]). It is defendant, not plaintiff, who has failed to carry her burden.

The court also improperly dismissed so much of the first cause of action as sought to recover amounts allegedly owed for defendant's purchase of plaintiff's half interest in the parties' Sagaponack property. It is uncontested that the parties both signed a document in which defendant agreed to this purchase. This agreement included the names of the parties, the price of the purchase, the terms of financing, a description of property, and plaintiff's relinquishment of all rights, title and interest in the property. As such, it was, on its face, a binding obligation (*see Wacks v King*, 260 AD2d 985 [1999]), and defendant does not argue that the written agreement lacked any material term. She does argue that there was no performance because legal title was never put in her name and the agreement was never filed; but upon execution of a valid contract, the equitable title passed to her, despite legal title remaining in plaintiff, and defendant's interest in the real property thus came into existence by operation of law (*see Dubbs v Stribling & Assoc.*, 274 AD2d 32, 38 [2000], *affd* 96 NY2d 337 [2001]; *Bean v Walker*, 95 AD2d 70, 72 [1983]; *Occidental Realty Co. v Palmer*, 117 App Div 505, 506-507 [1907], *affd* 192 NY 588 [1908]). Moreover, upon the passing of such interest, defendant assumed the risk of loss and the right to all appreciation (*see Bean*, 95 AD2d at 73). Defendant's written assumption of the debt to plaintiff for the purchase constituted sufficient consideration, and was also evinced in the ledger entries kept by the parties. While issues of fact clearly exist with regard to the parties' intentions relating to all of these documents and the ledger, as well as to defendant's claim of duress, they are not raised on appeal and would not, in any event, entitle defendant to summary judgment.

Defendant has also failed to demonstrate plaintiff's abandonment of this agreement, which would have to be knowing, voluntary and intentional (*see Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P.,* 7 NY3d 96, 104 [2006]). That the property was refinanced in plaintiff's name does not prove, as a matter of law, that any abandonment occurred. Plaintiff offered evidence that defendant signed an agreement assuming full responsibility for the refinancing, and took plaintiff's power of attorney for that purpose, while agreeing to indemnify plaintiff against any claims arising from the refinancing. Plaintiff's involvement in the new financing was required because he retained legal title while equitable title passed to defendant. Moreover, that plaintiff's name appeared on an action against a contractor after the agreement was signed does not prove, as a matter of law, that plaintiff abandoned the agreement; plaintiff testified he was unaware of that action until six years later, and he produced the verification page of the complaint therein, containing only defendant's name. Therefore, at the very least, issues of fact exist as to any claim of abandonment.

Similarly, the court improperly dismissed so much of the first cause of action as sought to recover amounts allegedly owed from defendant's purported sale of a half interest in her Manhattan cooperative apartment, and plaintiff's subsequent resale of that interest back to defendant. It is again uncontested that plaintiff executed express agreements for these transfers. That the shares or proprietary lease were never put into plaintiff's name does not invalidate the agreements, because plaintiff obtained a beneficial ownership in such shares upon execution of the contract (*see generally Broderick v Alexander,* 268 NY 306, 309 [1935]), which he then transferred back to defendant. He also offered documents, signed by defendant, in which she acknowledged receipt of interest payments on the loan she extended to plaintiff for the initial purchase, as well as documents, again signed by defendant, indicating that plaintiff paid half the maintenance and special assessments for the apartment. Therefore, at the very least, issues of fact exist as to the validity of these transfers, and the claim should not have been dismissed on summary judgment.

The court also improperly dismissed the second cause of action that was based on an agreement, again signed by defendant, whereby plaintiff allowed defendant to continue trading on his stock account, and defendant agreed to pay plaintiff any amount by which his account "falls" below $350,000. Ultimately, defendant lost plaintiff's entire investment. The court found

that the account was already below $350,000, and never again exceeded this amount. It also found that the agreement was prospective only, and not meant to cover losses that had already occurred, or any losses until the account again exceeded $350,000, which it never did. The court thus found that the agreement did not warrant recovery of this amount. However, the words used in the agreement are in the present tense, not necessarily indicative of an exclusively prospective application. At best, the agreement is ambiguous on this point, warranting denial of the motion for summary judgment on this ground (*see NFL Enters. LLC v Comcast Cable Communications, LLC*, 51 AD3d 52, 58 [2008]). Moreover, defendant testified at her deposition that it was her understanding the agreement was applicable to "not just further losses, but $350,000 worth of losses." This apparent conflict in her testimonies raises an issue of fact.

Defendant also argued that she did not sign this agreement until September 1994, at which time only $1,285 remained in the account, which was an insufficient amount with which to continue trading. However, the agreement they signed was dated June 14, 1994, and at least an issue of fact exists as to when the parties agreed to such an arrangement. If defendant agreed to it in June 1994, when there was more money in the account, and plaintiff permitted her to continue trading in this account based on this understanding, her signing in September would merely be a recognition on her part that she had so agreed, and that she had lost the remaining amount of money for which she was now liable. As of June 1994, when defendant claims only $44,000 of "net liquidating value" remained in the account, the statement still showed hundreds of thousands of dollars in long and short options, which might well have given defendant the incentive to continue trading, rather than liquidating at a loss, especially in light of her testimony that part of the reason she wanted this account was to create a track record for her trading strategy. Even the remaining $44,000 would be sufficient to support an inference that defendant had such incentive. If a contract is not against public policy and is not ambiguous, the courts should not relieve one of the parties of disadvantageous terms by the process of interpretation (*see Seifert, Hirshorn & Packman v Insurance Co. of N. Am.*, 36 AD2d 506, 508 [1971]; *see also Aloi v Board of Educ. of W. Babylon Union Free School Dist.*, 81 AD2d 874, 876 [1981]).

Defendant later signed a statement confirming that she owed plaintiff $384,715.08 plus interest for the losses on his funds management account, thus contradicting her present position that she owes nothing because the original agreement to

indemnify plaintiff for losses was prospective only, and would only have been operative had the account exceeded $350,000 after the agreement was entered. A party, by her own acts or words, may ratify what would otherwise be a questionable contract or provision of a contract (*Surlak v Surlak*, 95 AD2d 371, 381 [1983], *appeal dismissed* 61 NY2d 906 [1984]).

The court's conclusion that the contract, if interpreted as retroactive, lacked consideration, is incorrect, because the consideration was plaintiff's agreement to forebear liquidating the account in June (*see Holt v Feigenbaum*, 52 NY2d 291, 299-300 [1981]).

Defendant's estoppel argument, based on an allegedly contrary position taken by plaintiff in his tax returns, would have to await the court's receipt of those returns. However, to the extent that plaintiff simply sought to take these losses as business expenses because he did not believe defendant would be able to repay the debt, this would not be contrary to his position in this action. In other words, his tax position would not be a repudiation of the fact that such debt existed. In any event, the court was unable to make the determination without reviewing plaintiff's tax returns. Concur—Mazzarelli, J.P., Nardelli, Buckley, Acosta and DeGrasse, JJ.