Order, Supreme Court, New York County (Melvin L. Schweitzer, J.), entered April 17, 2012, which, to the extent appealed from, granted plaintiff leave to amend his amended complaint, unanimously modified, on the law and the facts, to deny leave with respect to the thirteenth, twenty-seventh, thirtieth, thirty-third, thirty-fourth, and thirty sixth causes of action of the second amended complaint (SAC), and otherwise affirmed, without costs.
We are not persuaded by defendants’ argument that they have been prejudiced by plaintiffs allegedly excessive delay in moving to amend. “Mere lateness is not a barrier to the amendment” (Edenwald Contr. Co. v City of New York, 60 NY2d 957, 959 [1983] [internal quotation marks omitted]). “Frejudice requires some indication that the defendant has been hindered in the preparation of his case or has been prevented from taking some measure in support of his position” (Kocourek v Booz Allen Hamilton Inc., 85 AD3d 502, 504 [1st Dept 2011] [internal quotation marks omitted]). Defendants failed to demonstrate such prejudice.
*585 Defendants contend that plaintiffs claims regarding an assignment he purportedly executed in 2000 are time-barred. This argument is unavailing. Where, as here, a party seeks to rescind a contract on the ground that the other party fraudulently induced him to enter into it, he may do so “ ‘promptly upon the discovery of the fraud’ ” (Ballow Brasted O’Brien & Rusin P.C. v Logan, 435 F3d 235, 240-241 [2d Cir 2006], quoting Sarantides v Williams, Belmont & Co., 180 NYS 741, 743 [App Term, 1st Dept 1920]). Plaintiff alleges that he did not discover the fraud until August or September 2009. Inasmuch as he commenced this action in April 2010, it is prima facie timely (cf. Ballow, 435 F3d at 236, 239-241 [four-year delay was unreasonable]).
Even if plaintiffs delay was excessive (see Sarantides, 180 NYS at 742-743 [delay of more than six months was excessive]), plaintiff has sufficiently pleaded that Day should be equitably estopped from invoking the statute of limitations with respect to the 2000 assignment (see e.g. Simcuski v Saeli, 44 NY2d 442, 448 [1978]). Furthermore, he alleges that Day waived her rights under the 2000 assignment because she did not seek to enforce it until June 2010. This presents an issue of fact precluding summary dismissal of plaintiff’s claim (see Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., 7 NY3d 96, 99 [2006]).
Defendants contend that plaintiff’s claims to rescind or invalidate the operating agreement of defendant RobinsonDay, LLC, which was executed in 2004, are time-barred. They also contend that plaintiff may not contradict his tax returns. However, plaintiff states that he is not attacking the operating agreement, rendering defendants’ arguments academic. In light of plaintiffs admission on appeal, he should not be allowed to assert the twenty-seventh cause of action in the SAC, which seeks a declaration that RobinsonDay was never a valid LLC.
Defendants contend that plaintiff cannot rescind the various contracts at issue in this case (the 2000 assignment, the 2005 assignments, the 2009 option agreements, and the 2009 transfer agreement) due to duress because he was not “compelled to agree to [their] terms by means of a wrongful threat which precluded the exercise of [his] free will” (Stewart M. Muller Constr. Co. v New York Tel. Co., 40 NY2d 955, 956 [1976]). However, plaintiff and Day did not have an arms-length business relationship like that of the two corporations in Muller. Instead, they were romantic companions for 14 years. Thus, their relationship was one of trust and confidence (see Sharp v Kosmalski, 40 NY2d 119, 120-121 [1976]). “[I]f a confidential relationship exists, the burden is shifted to the beneficiary of *586 the transaction to prove the transaction fair and free from undue influence” (Sepulveda v Aviles, 308 AD2d 1, 7 [1st Dept 2003]). This principle is not limited to the elderly and mentally incapacitated; for example, it was applied in Matter of Greiff (92 NY2d 341 [1998]) to “the special relationship between betrothed parties” (id. at 343). In any event, plaintiff claims he lacked the psychological capacity to contract with respect to financial matters.
Defendants contend that the documentary evidence belies plaintiffs claim that he received little or no consideration for the agreements he executed. However, because plaintiff and Day were in a confidential relationship, the burden is on defendants to show that the transactions were fair (see e.g. Matter of Gordon v Bialystoker Ctr. & Bikur Cholim, 45 NY2d 692, 698-699 [1978]; Sepulveda, 308 AD2d at 7). Moreover, even Apfel v PrudentialBache Sec. (81 NY2d 470 [1993])—the case on which defendants rely—states, “Absent fraud or unconscionability, the adequacy of consideration is not a proper subject for judicial scrutiny” (id. at 476 [emphasis added]). Plaintiff alleges both fraud and unconscionability.
Defendants contend that plaintiff ratified every agreement at issue in this litigation. However, ratification is a question of fact unless the evidence is undisputed and different inferences cannot reasonably be drawn from it (see Hedeman v Fairbanks, Morse & Co., 286 NY 240, 248-249 [1941]), and “[a] necessary element of ratification is intent” (Soma v Handrulis, 277 NY 223, 230 [1938]). We cannot say, as a matter of law, at this early, pre-answer stage of the action, that plaintiff ratified the agreements.
We are not convinced by defendants’ argument that the statute of limitations bars plaintiffs claims for (1) breach of fiduciary duty, except those arising out of the 2009 agreements, and (2) an accounting related to the 2000 assignment. The statute of limitations “does not begin to run until the fiduciary has openly repudiated his or her obligation or the relationship has been otherwise terminated” (Westchester Religious Inst, v Kamerman, 262 AD2d 131, 131 [1st Dept 1999] [an action seeking an accounting]). Day did not relinquish her power of attorney over plaintiff’s bank accounts until January 29, 2010, and plaintiff commenced the instant action on April 12, 2010.
Defendants contend that plaintiff’s quasi-contract claims (constructive trust, unjust enrichment, and money had and received) fail because there are express contracts covering the same subject matter. This argument is unavailing because “there is a bona fide dispute as to the existence of a contract” *587 (IIG Capital LLC v Archipelago, L.L.C., 36 AD3d 401, 405 [1st Dept 2007]). Plaintiff contends that all of the contracts on which defendants rely are invalid because he was fraudulently induced into entering them, they are unconscionable, they are the product of undue influence and duress, the consideration he received was inadequate, and he lacked the capacity to enter into them.
We are not persuaded by defendants’ argument that because plaintiff cannot plead the four requirements mentioned in Sharp (40 NY2d at 121), plaintiff has no claim for a constructive trust. “Although the [Sharp] factors are useful in many cases[,] constructive trust doctrine is not rigidly limited” (Simonds v Simonds, 45 NY2d 233, 241 [1978]).
Defendants contend that the statute of limitations bars plaintiff’s fraud claim insofar as the 2000 assignment is concerned. This argument is unavailing (see Sargiss v Magarelli, 12 NY3d 527, 532 [2009]). Plaintiff states that if he entered into the 2000 assignment, he did so in exchange for Day’s promise to manage his financial and legal affairs. He allegedly did not discover until early August 2009 that this promise was false. He commenced the instant action within two years of August 2009.
Defendants contend that plaintiff’s fraud claim is barred because the contracts’ “express terms contradict [plaintiff]’s allegations that he executed the contracts] in reliance upon . . . oral misrepresentations” (LaBarbera v Marino, 192 AD2d 697, 698 [2d Dept 1993]). This argument is meritless: the contracts at issue do not even contain general merger clauses, let alone “specific disclaimers] [that would] destroy[ ] allegations that the agreements were executed in reliance upon contrary oral misrepresentations” (id.).
Defendants’ contention that plaintiff fails to plead fraud with the particularity required by CPLR 3016 (b) is unavailing. A complaint need only “allege the misconduct complained of in sufficient detail to inform the defendants of the substance of the claims” (Bernstein v Kelso & Co., 231 AD2d 314, 320 [1st Dept 1997] [emphasis omitted]) and the SAC meets this standard.
Plaintiffs conversion claim with respect to the 2009 option and transfer agreements is however, time-barred, and in any event, plaintiff does not even address the dismissal of this claim in his opposition. Therefore leave to amend is denied as to the thirteenth cause of action.
Leave to amend is also denied as to the thirtieth and thirty-third causes of action, which are, respectively, for aiding and abetting fraud and defendants’ negligent conduct in handling plaintiffs accounts, since plaintiff has not opposed the arguments raised by defendants for dismissal of these claims.
*588 The thirty-fourth cause of action is dismissed because “an attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation” (Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d 135, 141 [1993]). Leave to amend should have been also denied as to the thirty-sixth cause of action because “New York does not recognize an independent tort cause of action for civil conspiracy” (Montan v Saint Vincent’s Catholic Med. Ctr., 81 AD3d 431, 431 [1st Dept 2011], lv dismissed 17 NY3d 872 [2011]).
We have considered defendants’ remaining arguments and find them unavailing. We reject plaintiffs argument that this appeal should be stayed pending decisions by the motion court on the motions to dismiss the SAC. Concur—Tom, J.P., Saxe, Moskowitz, Abdus-Salaam and Gische, JJ.