(November 30, 2017)

■ NINETEEN EIGHTY-NINE, LLC, Appellant, v CARL C. ICAHN et al., Respondents. [66 NYS3d 455]—

Order, Supreme Court, New York County (Eileen Bransten, J.), entered September 23, 2015, which denied plaintiff's post-trial motion to set aside the verdict and order a new trial, unanimously affirmed, without costs.

In November 2001, defendant Chelonian Subsidiary, LLC, controlled by defendant Carl C. Icahn, and 1989 Ltd., formed 1879 Hall, LLC (Hall), a Delaware limited liability corporation. 1989 Ltd. assigned its interest to plaintiff, Nineteen Eighty-Nine, LLC, controlled by Q Investments.

The sole purpose of Hall was "to acquire, hold, own and dispose of . . . Securities and Claims" of Federal-Mogul Corporation (FMO), an auto parts manufacturer that was in bankruptcy. Under the LLC agreement, if Chelonian, as Hall's manager, wanted to acquire more FMO securities or claims for Hall's account, it was to issue a written "Capital Call" requesting that plaintiff pay its pro rata share (23.411%), accompanied by a statement outlining the nature of the interests to be acquired and all material documentation relied on by Chelonian in deciding to acquire them. Plaintiff then had the option of participating or declining to participate in the transaction.

Plaintiff alleges that in addition to the FMO trades for which it received notice, some of which plaintiff participated in and some of which it did not, defendants engaged in 18 transactions in 2002 in which they purchased FMO bonds for their own account without notifying plaintiff in any manner (the 2002 FMO bond trades). Defendants contend that plaintiff received oral notice of those trades.

We previously granted plaintiff partial summary judgment on its breach of contract claim, finding that defendants had not proven that the LLC Agreement had been "modified by a course of conduct where business was conducted solely on a verbal basis" (96 AD3d 603, 605 [1st Dept 2012]). In a subsequent decision, we made clear that we "did not find that defendants failed to give oral notice" and that "defendants [were] free to present evidence that plaintiff [was] not entitled to consequential damages because, for example, it sometimes declined to buy FMO bonds when defendants offered it the opportunity to do so, i.e. plaintiff did not always buy when Icahn bought" (116 AD3d 624, 624, 625 [1st Dept 2014]).

At trial, the jury unanimously found that plaintiff had received oral notice of the 2002 FMO bond trades and awarded plaintiff nominal damages of $1 for Chelonian's technical breach of failing to provide written notice. The trial court denied plaintiff's motion to set aside the verdict and for a new trial pursuant to CPLR 4404 (a). We now affirm.

The exclusion of certain testimony during plaintiff's direct examination of Q Investments' principal, Geoffrey Raynor, about what he "would have done" if defendants had notified plaintiff of the 2002 FMO bond trades, even if erroneous, does not warrant reversal. Any error was mitigated when plaintiff was given the opportunity to present testimony as to what Raynor would have done on redirect examination, and there is no indication that the initial ruling prejudiced a substantial right of plaintiff or had a substantial influence on the result of the trial (CPLR 2002; *see Corneroli v Borghi*, 11 AD3d 409 [1st Dept 2004]; *Milone v Milone*, 266 AD2d 363 [2d Dept 1999]).

Significantly, the initial ruling did not prevent the jury from fully learning, and, during deliberations, having access to all of the relevant evidence from Raynor and the other witnesses for both sides on the notice issue. Rather, it bore only on direct and consequential damages, an issue that the jury did not reach once it determined that plaintiff received oral notice and was only entitled to nominal damages (*see Gilbert v Luvin*, 286 AD2d 600, 600 [1st Dept 2001] ["Where an error at trial bears only upon an issue that the jury did not reach, the error is harmless and may not serve as a ground for a new trial"]).

Furthermore, the initial ruling did not prevent plaintiff from presenting a coherent story through the testimony of Raynor, other witnesses, and documentary evidence. Raynor was allowed to testify on direct, based on plaintiff's internal records and protocols, that plaintiff did not receive oral notice of the 2002 FMO bond trades and that receiving notice of those trades was important because it would have allowed him to gauge Icahn's interest in the FMO bonds, which was crucial to his decision-making process. Raynor was also allowed to testify that plaintiff was damaged because "we weren't allowed to participate on these 18 trades, and these 18 trades made a substantial amount of money," that if he had participated in other FMO bond trades in June and October 2003 he would have made more money, and that knowing of the trades in 2002 would have given him different insight with respect to his investment decisions in 2004 and 2005 to sell plaintiff's FMO bonds to defendants or their affiliates. In this regard, plaintiff introduced charts into evidence detailing the 2001-2002 and 2003-2005 FMO bond trades, as well as plaintiff's alleged direct and consequential losses. Raynor was allowed to testify on direct that the charts showed $5.1 million in direct losses from not participating in the 2002 FMO bond trades and approximately $22 million in losses flowing from his decisions not to participate in the 2003 trades and to sell plaintiff's FMO bonds in 2004 and 2005.

In any event, on revisiting the issue, the court ruled that it would permit Raynor to testify on redirect that if he had known about the 2002 FMO bond trades he would have considered that the tipping point and elected to participate in the 2003 bond trades and would have held on to plaintiff's FMO bonds rather than selling them to defendants in 2004 and 2005. Based on this ruling, Raynor testified on redirect that had he known of the 2002 FMO bond trades it would have suggested a frequency of trading, which would have absolutely been important to his investment decisions on whether or not to participate in FMO bond trades in June and October 2003 and to sell his bonds to defendants in 2004 and 2005. Plaintiff's counsel did not ask Raynor whether he would have participated in the subject trades had he known about them.

Similarly, the exclusion of certain of plaintiff's in-house counsel's testimony as hearsay was not prejudicial, because the proffered testimony was irrelevant. Further, plaintiff's counsel was not prevented from impeaching one of defendants' witnesses, but was merely directed to rephrase his question in a less prejudicial manner (*see People v Lopez*, 72 AD3d 593 [1st

Dept 2010], *lv denied* 15 NY3d 807 [2010]). Additionally, the court providently exercised its discretion in excluding, as prejudicial, evidence of defendants' profits but allowing evidence of their component parts—i.e., the price of the securities purchased and the percentage of profits retained (*see Hyde v County of Rensselaer*, 51 NY2d 927, 929 [1980]).

There is no basis to disturb the jury's credibility determinations, and plaintiff has not demonstrated that the jury's determination was against the weight of the credible evidence produced at trial. The jury could rationally credit the testimony that plaintiff received notice of the 2002 FMO bond trades.

The trial court did not excessively intervene in the proceedings so as to deny plaintiff a fair trial (*see DeCrescenzo v Gonzalez*, 46 AD3d 607, 608-609 [2d Dept 2007]; *Taromina v Presbyterian Hosp. in City of N.Y.*, 242 AD2d 505, 506 [1st Dept 1997]). A trial court has "broad authority to control the courtroom, rule on the admission of evidence, elicit and clarify testimony, expedite the proceedings and to admonish counsel and witnesses when necessary" (*Campbell v Rogers & Wells*, 218 AD2d 576, 579 [1st Dept 1995]). Plaintiff has not shown that the court's conduct had the cumulative effect of "divert[ing] the jurors' attention from the issues to be determined" (*Desinor v New York City Tr. Auth.*, 34 AD3d 521, 522 [2d Dept 2006], *lv denied* 11 NY3d 704 [2008]). The record does not reflect repeated baseless criticism of plaintiff's counsel in the presence of the jury or gratuitous comments on the credibility of plaintiff's witnesses to unduly influence the jurors and prevent them from considering the issues in a "fair, calm and unprejudiced manner" (*Salzano v City of New York*, 22 AD2d 656, 656 [1st Dept 1964]).

We have considered plaintiff's remaining arguments and find them unavailing. Concur—Friedman, J.P., Richter, Andrias and Moskowitz, JJ.