Ray v Ray (2020 NY Slip Op 00985)





Ray v Ray


2020 NY Slip Op 00985


Decided on February 11, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 11, 2020

Friedman, J.P., Renwick, Kern, Oing, JJ.


10987A 604381/98 10987

[*1] Ames Ray, Plaintiff-Appellant,
v
Christina Ray, Defendant-Respondent.


McLaughlin & Stern, LLP, New York (Peter C. Alkalay of counsel), for appellant.
Ropers Majeski Kohn Bentley P.C., New York (Matthew A. Beyer of counsel), for respondent.



Judgment, Supreme Court, New York County (Charles E. Ramos, J.), entered November 9, 2018, which granted defendant's motion under CPLR 5016(b) to enter judgment upon the jury verdict dismissing the complaint, and to impose sanctions against plaintiff under 11 NYCRR § 130-1.1, unanimously reversed, on the law and the facts, without costs, the judgment vacated, the second cause of action reinstated, and the matter remanded for a new trial as to that cause of action. Appeal from order, same court and Justice, entered October 12, 2018, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
We find no error occurred requiring a new trial on the first cause of action alleging a $590,000 debt stemming from several agreements. We reject plaintiff's claim that the trial court improperly shifted the burden to him to demonstrate that the agreements were fair to defendant. The ruling was proper because the evidence established that the parties were involved in a romantic relationship during the time defendant entered into the agreements underlying the first cause of action (see Robinson v Day, 103 AD3d 584, 585-586 [1st Dept 2013]).
Likewise, the jury charge properly addressed the relevance of plaintiff's continued deduction of mortgage interest and property taxes on the Sagaponack house after the parties executed an agreement in which plaintiff stated that he relinquished all his "right, title and interest" in the property. This evidence was relevant to whether the transfer was valid or a "sham."
The trial court also properly noted for the jury that plaintiff's "ledger" containing meticulous recorded entries of the parties' expenses was not substantiated by backup documentation. As such, the jury might view the ledger as insufficient evidence of the alleged transactions.
The trial court, however, committed reversible error in dismissing the second cause of action pertaining to investment losses. Unlike the alleged debts accrued under the first cause of action, the second cause of action was based on an agreement, signed by defendant, whereby plaintiff allowed defendant to continue trading on his commodity account, and defendant agreed to pay plaintiff any amount by which his account "falls" below $350,000. To the extent that the parties entered into this agreement after they physically separated in 1992, a question of fact exists as to whether they remained in a confidential relationship that would shift the burden to plaintiff to prove that the agreement was fair (see Robinson, supra).
Moreover, the trial court incorrectly stated that the parties both testified at their depositions that they agreed that defendant would be responsible for "going forward losses," without acknowledging that defendant actually gave conflicting deposition testimony. She first testified that the agreement in question was "not just further losses, but $350,000 worth of losses," and then later changed her testimony, asserting that she only agreed to indemnify prospective losses. As this Court previously noted, an issue of fact existed as to the parties' understanding of the extent defendant agreed to indemnify plaintiff in exchange for trading on his [*2]commodity account (see Ray v Ray, 61 AD3d 442, 446 [2009]), a central question in
evaluating plaintiff's second cause of action (see Nineteen Eighty-Nine, LLC v Icahn, 155 AD3d 566, 567 [1st Dept 2017]; Sadhwani v New York City Tr. Auth., 66 AD3d 405, 406 [1st Dept 2009], lv denied 14 NY3d 705 [2010]).
In that same vein, the verdict sheet erroneously assumed that defendant was only prospectively responsible for losses in the commodity account as of the date she signed the agreement, although again, as this Court previously noted, a question of fact existed as to whether the parties came to an agreement in June 1993, upon which defendant continued to trade on the commodity account, and then defendant signed the agreement in September 1993 merely as "recognition on her part that she had so agreed" (Ray, 61 AD3d at 446). In presuming an "effective date" of the parties' agreement, the trial court usurped the jury's fact-finding function, and had a substantial influence on the result of the trial (see Nineteen Eighty-Nine, LLC, supra; Sadhwani, supra).
Finally, we find that the court erred in imposing sanctions against plaintiff under 11 NYCRR § 130-1.1 for "frivolous conduct," because plaintiff did not manifest the "extreme behavior" usually required to sustain the award of sanctions (Hunts Point Term. Produce Coop. Assn., Inc. v New York City Economic Dev. Corp., 54 AD3d 296, 296 [1st Dept 2008]). Contrary to defendant's contention, plaintiff did not knowingly assert false material statements at trial, but rather maintained that he retained legal title to the Sagaponock house and transferred equitable title to plaintiff (compare Sanders v Copley, 194 AD2d 85, 86-87 [1st Dept 1993]), an issue that the court allowed to be submitted to the jury for determination, indicating that plaintiff's position was not "completely without merit" (see Kremen v Benedict P. Morrelli & Assoc., P.C., 80 AD3d 521, 523 [1st Dept 2011]). Accordingly, we vacate the award of sanctions. We have considered the parties' remaining arguments and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: FEBRUARY 11, 2020
CLERK