Ray v Ray (2023 NY Slip Op 50704(U))

[*1]

Ray v Ray

2023 NY Slip Op 50704(U)

Decided on July 11, 2023

Supreme Court, New York County

Borrok, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 11, 2023
Supreme Court, New York County

Ames Ray, Plaintiff,

against
Christina Ray, Defendant.

Index No. 604381/1998

Plaintiffs by:
McLaughlin & Stern LLP, 260 Madison Avenue, New York, NY 10016
Defendants by:
Lewis Brisbois Bisgaard & Smith LLP, Wells Fargo Center, 90 S 7th Street, Suite 2800, Minneapolis, MN 55402

Andrew Borrok, J.

The following e-filed documents, listed by NYSCEF document number (Motion 015) 44, 45, 46, 47, 48, 49, 50, 63, 64, 65, 66, 67, 68, 69, 70 were read on this motion to/for PRECLUDE.
The following e-filed documents, listed by NYSCEF document number (Motion 016) 51, 52, 53, 61, 71 were read on this motion to/for PRECLUDE.
The following e-filed documents, listed by NYSCEF document number (Motion 017) 54, 55, 56, 57, 58, 59, 60, 62, 72 were read on this motion to/for PRECLUDE.
A second jury trial is scheduled to commence on July 31, 2023. 
By way of background, following a jury trial dismissing the complaint and imposing sanctions against the Plaintiff, on November 9, 2018, the court (Ramos, J.) entered judgment. On appeal, the Appellate Division vacated the judgment, reinstated the second cause of action, and remanded the matter for a new trial as to that cause of action (the Appellate Division Decision):
The trial court, however, committed reversible error in dismissing the second cause of action pertaining to investment losses. Unlike the alleged debts accrued under the first cause of action, the second cause of action was based on an agreement, signed by defendant, whereby plaintiff allowed defendant to continue trading on his commodity account, and defendant agreed to pay plaintiff any amount by which his account "falls" below $350,000. To the extent that the parties entered into this agreement after they physically separated in 1992, a question of fact exists as to whether they remained in a confidential relationship that would shift the burden to plaintiff to prove that the agreement was fair (see Robinson).
Moreover, the trial court incorrectly stated that the parties both testified at their depositions that they agreed that defendant would be responsible for "going forward losses," without acknowledging that defendant actually gave conflicting deposition testimony. She first testified that the agreement in question was "not just further losses, but $350,000 worth of losses," and then later changed her testimony, asserting that she only agreed to indemnify prospective losses. As this Court previously noted, an issue of fact existed as to the parties' understanding of the extent defendant agreed to indemnify plaintiff in exchange for trading on his commodity account (see Ray v Ray, 61 AD3d 442, 446 [2009]), a central question in evaluating plaintiff's second cause of action (see Nineteen Eighty-Nine, LLC v Icahn, 155 AD3d 566, 567 [1st Dept 2017]; 
Sadhwani v New York City Tr. Auth., 66 AD3d 405, 406 [1st Dept 2009], 
lv denied 14 NY3d 705 [2010]).
In that same vein, the verdict sheet erroneously assumed that defendant was only prospectively responsible for losses in the commodity account as of the date she signed the agreement, although again, as this Court previously noted, a question of fact existed as to whether the parties came to an agreement in June 1993, upon which defendant continued to trade on the commodity account, and then defendant signed the agreement in September 1993 merely as "recognition on her part that she had so agreed" (Ray, 61 AD3d at 446). In presuming an "effective date" of the parties' agreement, the trial court usurped the jury's fact-finding function, and had a substantial influence on the result of the trial (see Nineteen Eighty-Nine, LLC; Sadhwani)
(Ray v Ray, 180 AD3d 472, 473-474 [1st Dept 2020], lv denied 35 NY3d 1007).
As discussed on the record (7.10.23), the Plaintiff's motions (Mtn. Seq. Nos. 015 and 016) seeking to (i) limit the Defendant to introducing evidence only at the precise moment in time that the trading agreement was executed by excluding certain evidence, including circumstantial evidence of the parties relationship both prior to, and subsequent to, such time and (ii) limit the Defendant to using certain other exhibits solely for impeachment purposes, including prior pleadings, transcripts, and the release signed in connection with the Plaintiff's litigation with Citibank (the Citibank Release Agreement) both are denied.
The Appellate Division Decision places certain issues of fact for trial including (i) what the terms of the trading agreement were (i.e., whether the agreement when executed memorialized a pre-existing agreement or whether the agreement was for prospective losses only) and (ii) whether a confidential relationship continued at the time that the trading agreement was consummated such that the burden to demonstrate that any such agreement was not fair shifts from the Defendant to the Plaintiff to demonstrate that any such agreement was fair. 
The Court notes that it will be incumbent on the party seeking to introduce evidence to lay an appropriate foundation as to the relevance to the issues being tried in this case and to establish that any such evidence is otherwise admissible. 
For the avoidance of doubt, as discussed, among other things, the Defendant is entitled to introduce (i) the Citibank Settlement Agreement because such agreement relates to the Plaintiff's funding of the commodity account, (ii) Plaintiff's admissions, (iii) evidence of Plaintiff's positions taken in the tax litigation which are at odds with the positions taken here and (iv) other evidence of a course of conduct between the parties which is relevant to the nature of the [*2]relationship at the time the agreement was consummated. Such evidence is not limited to the precise moment in time that the agreement was entered into because both the nature of the agreement and the relationship between the parties are at issue. To the extent that the nature of the relationship changed, and the course of dealings changed, when such change occurred and how it changed is also relevant to what the relationship was when the trading agreement was executed.
For completeness, to the extent that the Plaintiff relies on Matter of Greiff, 92 NY2d 341 (1998) to argue that the Court should require the Defendant to satisfy a two-prong test before the burden shifts to the Plaintiff, the argument fails.
In Greiff, the Court of Appeals had occasion to discuss and clarify the proper inquiry as to when the burden shifts to the beneficiary of an agreement to justify its enforceability. More specifically, Greiff involved a prenuptial agreement which included a waiver of the statutory right of election. The appellant's husband who passed away had a will which left no provision for the appellant surviving spouse. The appellant filed a petition seeking a statutory elective share of the decedent spouse's estate. Following trial, the court held that the decedent husband was in a position of great influence and advantage such that he in bad faith and exercising undue influence was able to have the appellant execute the prenuptial agreement and that, as such, it was not enforceable. Upon review, the Appellate Division reversed, holding that the appellant had failed to establish that the execution of the prenuptial agreement was procured through fraud or overreaching. On appeal, the Court of Appeals reversed holding that the proper inquiry is looking at the totality of the facts and circumstances whether the nature of the relationship warrants shifting the burden to the beneficiary of the agreement to prove that the agreement was free of fraud, deception or undue influence:
A specific frame of reference for that court should be whether, based on all of the relevant evidence and standards, the nature of the relationship between the couple at the time they executed their prenuptial agreements rose to the level to shift the burden to the proponents of the agreements to prove freedom from fraud, deception or undue influence
(id., at 347).
Robinson v Day, 103 AD3d 584 (1st Dept 2013) further illustrates the point. Robinson involved a series of agreements entered into between a prominent writer and his "sometimes companion." The plaintiff in that case alleged that, after he received a settlement that would provide him approximately $350,000 per year, the defendant began manipulating him to obtain control of his financial assets. To wit, based on certain alleged oral representations that she would use his assets only for his benefit, the plaintiff entered into a series of agreements which transferred his assets to her. Subsequently, he brought suit seeking to void these agreements. The trial court dismissed the amended complaint but gave leave to file a second amended complaint. On appeal, the Appellate Division rejected the defendant's argument that the plaintiff could not rescind the various agreements due to duress holding that the parties did not have an arms-length business relationship like that of the two corporations because they had been romantic companions for 14 years and therefore had a relationship of trust of confidence. As such, the burden shifts to the defendant beneficiary to prove that the transaction was fair and free from undue influence:
Defendants contend that plaintiff cannot rescind the various contracts at issue in this case [*3](the 2000 assignment, the 2005 assignments, the 2009 option agreements, and the 2009 transfer agreement) due to duress because he was not "compelled to agree to [their] terms by means of a wrongful threat which precluded the exercise of [his] free will" (Stewart M. Muller Constr. Co. v New York Tel. Co., 40 NY2d 955, 956 [1976]). However, plaintiff and Day did not have an arms-length business relationship like that of the two corporations in 
 Muller. Instead, they were romantic companions for 14 years. Thus, their relationship was one of trust and confidence (see Sharp v Kosmalski, 40 NY2d 119, 120-121 [1976]). "[I]f a confidential relationship exists, the burden is shifted to the beneficiary of the transaction to prove the transaction fair and free from undue influence" (Sepulveda v Aviles, 308 AD2d 1, 7 [1st Dept 2003]). This principle is not limited to the elderly and mentally incapacitated; for example, it was applied in 
 Matter of Greiff (92 NY2d 341 [1998]) to "the special relationship between betrothed parties" (id. at 343)
(id., at 585-586).
As discussed above, in this case, and citing Robinson, the Appellate Division held that, if the Defendant establishes that a confidential relationship continued at the time the trading agreement was executed, the burden would shift to the Plaintiff to prove that the trading agreement was fair and free of undue influence (Ray, 180 AD3d at 473). Based on Greiff and its progeny, no second prong inquiry is required.
The Defendant's motion (Mtn. Seq. No. 017) is granted to the extent that the Defendant may introduce relevant circumstantial evidence of the nature of the parties' relationship as evidence of what the relationship was at the time the agreement in question was executed. As discussed above, the Defendant must set an appropriate foundation and the evidence must otherwise be admissible. The motion must also be granted to the extent that the Plaintiff may not argue to the jury that the contracts underpinning the first cause of action are enforceable. This is the law of the case. The court (Ramos, J.) held that those contracts were unenforceable and that decision was affirmed. The Plaintiff may also not argue to the jury that he was actively involved in the trade or business contemplated by the trading agreement. This argument was expressly rejected by the IRS and the Fifth Circuit. He was an investor in the strategy and the Defendant's business. Finally, the branch of the motion to preclude the use of visual aids not disclosed to opposing counsel prior to trial is granted as unopposed and applies to both parties.
DATE 7/11/2023
ANDREW BORROK, J.S.C.